GEORGE L. RECORD, DEFENDANT IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY AND THE LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFFS IN ERROR.

Argued June 25, 1908—Decided March 2, 1909.

1. An ordinance of the city of Newark required all railroad companies operating cars propelled by steam on or over its public streets to cause to be erected fences and safety gates at all points on their tracks where crossed by any street. The plaintiff's automobile collided at night with the gates (which defendants had erected at one of the crossings in conformity with the ordinance) because of the negligent failure of the gateman in charge to properly light them; upon a question raised as to the joint responsibility of the defendants for such negligence it was *held*, that the defendants' duty to the traveler, lawfully using the street crossing, required them to anticipate the danger of such a collision after the gate had been lowered at night, and to provide proper means to warn the traveler so as to prevent the injury, and since it appeared that one of the defendants had provided no other means of prevention except the care of a gateman employed by its co-defendant, the former was responsible jointly with the latter for the gateman's negligence.

2. *Held*, also, that since both defendants had the common use and benefit of the gates, the responsibility of each toward the public was the same as if it *alone* used the gates, and each was bound by law to exercise due care for their maintenance in proper condition.

3. And *held* further that the court will presume, nothing appearing in the evidence to the contrary, that each of the defendants, whose railroads were embraced within the scope of the ordinance, had obeyed both the letter and intent of that law, and, after erecting, had assumed and undertaken to perform the duty of properly managing the gates, and to that end had appointed a gateman, and had placed him, on the night in question, in the responsible charge of them.

On error to the Supreme Court.

For the plaintiff in error (the Lehigh Valley Railroad Company), *Collins & Corbin.*

For the plaintiff in error (the Pennsylvania Railroad Company), *Vredenburgh, Wall & Carey.*

For the defendant in error, *Merritt Lane.*

The opinion of the court was delivered by

VREDENBURGH, J.   The plaintiff sued to obtain compensatory damages for injuries to his person and property received while he was traveling in his automobile at night in the public streets of the city of Newark.   His injuries resulted from a collision with safety gates in the actual possession and charge of the defendants, which had been erected by them over a public highway that crossed their railroad tracks at the place of the collision.   The particular nature of the negligence claimed against the defendants, and shown by the evidence, consisted in their failure to put lights, after dark, upon the gates lowered at the crossing, as they had theretofore lighted them, and the absence of which led the plaintiff to believe, as he insists, that the crossing was unobstructed by the gates, and hence his collision with them.   With the conclusions arrived at by the Supreme Court in its opinion filed below, affirming the judgment of the trial court against both defendants, we, in the main, agree, and except for the reason next referred to would deem it unnecessary to add any qualification of them, but the trial court had erroneously admitted in evidence, against the objection of the Lehigh Valley Railroad

Company, a written agreement purporting to have been jointly entered into by the two defendants relating to the construction and operation of the gates in question, produced in court by the Pennsylvania Railroad Company upon notice to it. While the record shows that this agreement was legally proved and admitted as affecting the Pennsylvania company, it also shows that no proof was made of its execution by the Lehigh Valley defendant, and since the Supreme Court affirmed the judgment of the trial court, notwithstanding this error, we are called upon for an expression of opinion in respect to it. The Supreme Court, in disposing of this admittedly erroneous ruling of the trial court, seems to have regarded it as having been either cured or waived by the course of conduct pursued at the trial by the counsel of the last-named company, because, it is said, they made no request of the trial judge, after the paper had been properly introduced in evidence as against the first-named defendant, to exclude it from his consideration (he sitting as a jury) upon the question of the liability of the latter company. We, however, find it needless to determine whether or not this negative course adopted by counsel had the attributed effect, for we are satisfied that the responsibility of the Lehigh Valley company for the negligent management of the gates can legally rest upon other grounds and without resort to the agreement.

The trial court properly found, we think, under the weight of the evidence, that the gateman in charge of the gates had negligently failed to place and keep upon them warning lights on the night in question, and that, by force of the terms of the agreement, he was the authorized agent of the Pennsylvania company in the operation of the gates, but it remains to be considered whether *without the aid of this instrument* he should be regarded as the agent of the Lehigh Valley company in such operation.

An ordinance of the city of Newark (passed in the year 1902) required *all* railroad companies operating cars propelled by steam on or over the public streets of that city, except where single tracks were used, to erect, or cause to be erected, fences, together with a certain kind of gates known generally

as "safety gates" of a prescribed form, to be approved by certain city officers, at all points on their tracks where they were crossed by any street of the city. The evidence sufficiently shows that the Lehigh Valley Railroad Company was one to which the conditions named in the ordinance applied, and it is not open to the least doubt but that after the passage of this city law it became at once the legal duty of that company to comply therewith, and to erect, or cause to be erected, the required gates along its two tracks and over this crossing. Was this enjoined duty fully performed by the *mere erection* of the gates by the railroad companies, or did it extend also to the proper management of the fixtures after such erection? While the letter of the ordinance is silent as to any operation, by any person, of the gates after their erection, it seems clear that its *primary* intent, if not its whole purpose, would be frustrated unless the railroad company thus required to erect the gates was also charged with the additional duty which such construction and possession would seem to entail upon it of their proper and effective operation. The ordinance evidently contemplated that upon the approach of the traveler, lawfully using the highway at the street crossings of the railroad, these gates should be sufficiently raised up by an intelligent hand operating them, so as to permit his safe passage under them, and should be properly lowered again upon the coming of the railroad trains. Such management, it seems to me, must be the necessary implication to be drawn from the very name, form and purpose of this well-known safety contrivance. By the mere erection of the safety gates the company recognized the crossing as a dangerous one. *Smith* v. *Atlantic City Railroad Co.,* 37 *Vroom* 307, 310; 3 *Ell. Rail.* 1171.

Without proper management such a fixture, when constructed across the public thoroughfares, would become a public nuisance, *per se.* It is the settled law that the public streets and sidewalks are presumed to be free from obstructions to the full width (*Durant* v. *Palmer, 5 Dutcher* 544), and an intention to obstruct the public streets by the law making power of a municipality will not readily be inferred

by the courts. The language of the present ordinance should be liberally construed so as to advance its evident object, which was to secure the safety of the public traveler, both in the highways and in the railroad trains. In brief, I think the court is justified in presuming, nothing appearing in the evidence to the contrary, that each of the defendants whose railroads are embraced within its scope, obeyed the intent of this law, and having erected, had assumed and undertaken to perform the duty of managing these gates, and to that end had appointed the gateman and placed him in responsible charge of them on the night in question.

But there is another ground, supported by approved authority, upon which the responsibility of the Lehigh Valley company for the negligence of the gateman can be rested. The evidence shows that the latter company, in common with the former, had in the actual running of its trains availed itself of the use and benefit of the gates and of the services of the gateman. It was not disputed at the trial that the Lehigh Valley company had had notice and knowledge that this gateman was accustomed to signal its trains for stopping at the crossing, and to lower the gates for their safe movement (on the very occasion of this collision one of its trains had stopped there, and the gates had been let down by the gateman for its passage). That it relied wholly in the running of its trains over the crossing upon the manipulation of the gates by the gateman cannot, under the proofs, be seriously disputed.

Under these facts a question is fairly presented—analogous, it seems to me, to that which confronted the Supreme Court in the case next adverted to—whether the gateman, who was admittedly acting as an agent for the Pennsylvania company in the performance of this public duty it owed under the ordinance, should not also be regarded in law as the agent selected by the Lehigh Valley company for the execution of the same duty. In the case of *Dunn* v. *Pennsylvania Railroad Co.*, reported in 42 *Vroom* 21, the Supreme Court, in an opinion by the late Mr. Justice Dixon, marked by his characteristic clearness of reasoning, applied a similar principle to the right of recovery of a passenger against the carrying com-

pany, who was injured by the cars of another railroad company under the circumstances next stated. It is true that the court was there dealing with the relation of carrier and passenger—with the contractual duty which the company owed to its passenger injured in a collision through the negligent management of its train, but it seems to me that this duty does not occupy a higher plane of obligation in contemplation of law than that which is devolved upon such a company in obedience to the command of a municipal law intended for the security of life and property. The injury of the plaintiff in the Dunn case occurred in a collision between the train he occupied and two freight cars standing on the passenger track, which had escaped from a freight yard a few minutes before the collision. The railroad and its appurtenances, including the freight yard, belonged to another corporation, but were used in common by the defendant and a third company. The tracks in the freight yard had a descending grade toward the place of the accident, and the defendant claimed that the escape of the cars resulted from their being struck by a drill engine of the third company through the negligence of the engine driver, and the court *"held,* that the defendant's duty to its passengers required it to foresee the danger of such an occurrence and to provide means for its prevention, and *since it had provided no means except the care of those engaged in the yard it was chargeable with their negligence."*

The defendant's duty in the case at bar, it seems to me, required it to foresee the danger to the public traveler of permitting the gates to stand across the public street at night without being lighted, and to provide the means to guard against such danger, and since it had provided no other means to that end than the services of the gateman employed by the other company, it was responsible for his negligence. The opinion of Justice Dixon refers to many authorities, the leading one being the case (decided in England by the Exchequer Chamber, the material facts of which are fully stated in his opinion) of *Blake* v. *The Great Western Railway Co., 7 Hurlst. & N.* 986. The rule established by the English court was that the responsibility of the carrying company to its passengers,

where it used its line in common with another railway company, was the same as *if it alone used the line,* and *"bound the company to the exercise* of due care for the maintenance of the *whole line in proper condition,* in the discharge of which obligation the other company *and its agents* were to be deemed *subordinate agents* of the carrying company."

Both defendants in the case at bar had the common use of this safety appliance and the responsibility of each to the public was, I think, the same as if *it alone* used it, and each was bound to exercise due care for its maintenance in proper condition; in the discharge of this duty the Pennsylvania railroad defendant, *and its agents,* should be regarded as the *subordinate agents* of the Lehigh Valley defendant.

I think that the joint judgment against the defendants in the Supreme Court should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J.    12.

*For reversal*—None.