LEON F. FIFE, Appellant, v. THE CHICAGO &
ALTON RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, December 1, 1913.

1. **DAMAGES: Railroads: Public Road Crossings.** This is an
action instituted by the plaintiff to recover damages to his
horse and buggy by a collision with the defendant's railroad
train. A servant of the plaintiff and two companions were
driving plaintiff's horse and buggy home from the county fair,
when they fell asleep, and, while still asleep, the horse ap-
proached the defendant's railroad crossing near a station called
Steinmetz. The defendant's freight train, cut in two to leave
the crossing open, was standing there, and, as a passenger
train approached, the crew closed the gap, preparing to follow
the passenger train. The horse went on the track in the path
of the coming passenger train, was killed and the buggy
wrecked. *Held*, that there was no prejudicial error to the
plaintiff at the trial.

2. **INSTRUCTIONS: Evidentiary Issues.** : When facts are indisputably established, that the statutory crossing signals were given by the engineer of the passenger train, it was not error to restrict the jury's consideration of the case to evidentiary issues.

3. ————: **Assuming Facts as Proved.** An instruction which assumes as a proved fact that the damage to plaintiff was caused by negligence of defendant concurring with negligence of the servant of plaintiff, was properly refused.

Appeal from Howard Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*S. C. Major* and *J. H. Denny* for appellant.

*Don C. Carter* for respondent.

JOHNSON, J.—A passenger train operated by defendant collided at a public road crossing in Howard county with a horse and buggy owned by plaintiff and this action is to recover the resultant damages on the ground that they were caused by negligence of defendant. The petition alleges "that the tracks of defendant, consisting of main track and a sidetrack, are laid across a certain traveled public highway in said county leading from the city of Glasgow to the town of Armstrong in said county, near defendant's station at Steinmetz station on said railroad; the tracks at said crossing being on the same grade as said highway; that on the 18th day of August, 1911, while a certain horse and buggy belonging to plaintiff was lawfully passing along and upon said highway at the point of crossing of defendant's tracks as aforesaid, the agents and servants of defendant managing said railroad and in charge of its trains thereon, so negligently, carelessly and unskillfully conducted themselves that a certain locomotive and train of cars then and there in charge of the agents and servants of de-

fendant were by reason of the negligence, unskillful-
ness and want of care of the agents and servants of
defendant, with great force and violence driven and
run upon and against said horse and buggy of plain-
tiff, and plaintiff's horse, buggy and harness, of the
value of three hundred and sixty dollars, were thereby
wholly destroyed.''

The answer interposes a general denial and a plea
that negligence of the agent of plaintiff in charge of
the horse and vehicle contributed to the injury. A
trial of the issues in the circuit court resulted in a
verdict and judgment for defendant. Plaintiff ap-
pealed.

The facts of the case are as follows: Plaintiff, a
farmer living about two and one-half miles north of
the crossing in question and about twelve miles from
Fayette, lent a horse and buggy to one of his servants,
a young man named Schafer, who desired to spend
the day at a county fair being held at Fayette. On his
way to the fair Schafer stopped at an intermediate
town and had a tire reset at his own expense but did
this voluntarily and not at the request of plaintiff.
Aside from this incident the evidence shows conclu-
sively that the use of the property by the servant was
for his own pleasure and not on his master's business.
After spending the day and the first half of the night
at Fayette, Schafer started to return home with two
companions he had found at the fair and had agreed to
take to their homes three or four miles east of plain-
tiff's farm. All three being intoxicated fell asleep in
the buggy and the horse, allowed to take his course, fol-
lowed the nearest road home. Sometime before reach-
ing the crossing Schafer awoke, discovered that the
horse had left the road to the homes of his companions,
decided that the young men should spend the night
with him and then relapsed into slumber. The next
time he regained consciousness he was in Glasgow, one

of his companions was dead and the other severely injured.

It appears that the horse being pointed homeward traveled on, keeping in the road which runs north and south until he reached the crossing which is in the country a short distance east of the station at Steinmetz. The railroad, which runs east and west, has two tracks at this place, the main track and the passing track, which is six feet north. Just east of the crossing the tracks curve towards the north. A westbound freight train had been standing on the passing track for several hours before the injury but had been cut in two at the crossing to allow the free use of the public road. Its crew had orders to follow a westbound passenger train due to pass Steinmetz at about three o'clock in the morning and when they saw from the glare cast by its light that the passenger train was coming, they closed the gap in their train preparatory to following it. The movement, of course, obstructed the crossing and when the unguided horse arrived he found his further progress blocked by the freight train. There is a controversy between the parties over the length of time this blockage continued. The brakeman who coupled the two parts of the train states that the passenger train arrived not more than two or three minutes after the crossing was closed and that the horse and buggy were not at the crossing when he coupled the cars. On the other hand witnesses introduced by plaintiff who examined the place after daybreak testified to finding a multitude of hoofprints and buggy tracks from which it well might be inferred that the horse had been at the crossing a long time and had restively worked his way over towards the west side. As to the character of the crossing the evidence shows that the railroad is on a lower level than the wagon road which slopes down to the crossing on each side. The facts are not disputed that the passenger train was late, was running from forty to

fifty .miles per hour, and that its engine whistled for the station and again for the crossing. The engine carried a powerful electric headlight but the engineer testified that on account of the curve he could not see the crossing and did not become aware of the presence of the horse (he did not see the buggy) until the engine was not over sixty feet from the crossing. A collision was unavoidable but fearing the horse might be thrown back under his train by rebounding from the freight train he immediately applied the brakes and stopped the train in a space of about 600 feet. The three occupants of the buggy were found between the main and passing tracks thirty or thirty-five feet west of the crossing; the body of the horse was also between the two tracks and a few feet west of the bodies of the men. The wreckage of the buggy was scattered along both sides of the main track. It was a starlit summer night, too dark, the engineer states, for him to see anything out of the narrow path of the electric headlight which, because of the curve, did not touch the crossing until the engine was about sixty feet from it. Witnesses introduced by plaintiff, who made tests afterwards, contradict this statement and say that the curve was not so sharp and that the crossing came within the path of the light at a distance of 600 feet.

The instructions given at the request of plaintiff directed a verdict for him on the finding that his property was destroyed "by an engine and train of cars running on said. main track and that the agents and servants of defendant in charge of said trains or either of them failed to exercise that degree of care for the safety of the animals or property at said crossing which persons of ordinary care and prudence would exercise under like circumstances, and that in direct consequence of such neglect, plaintiff's said property was destroyed."

The court refused the second instruction asked by plaintiff which is as follows:

"If the jury find from the evidence that the property destroyed had been loaned by plaintiff to Schafer and was in the exclusive control of Schafer, then the fact that the property was destroyed on account of the joint or concurrent negligence of both defendant and Schafer will not absolve defendant from liability, but each would be jointly and separately liable."

On behalf of defendant the court gave an instruction similar to that designated as "D. 1," in the case of Schmitt v. Trans. Co., 115 Mo. App. 445, which the St. Louis Court of Appeals approved as "an admirable admonitory charge to the jurors about the spirit in which their duties should be performed and warning them to permit no sympathy or prejudice to influence them." We share this view of instructions of that character and do not agree with counsel for plaintiff that they have a tendency to prejudice or mislead the jury.

Other instructions given at the request of defendant against which objections are urged by plaintiff told the jury (2) "that defendant had a right to couple up the freight train at the time the evidence discloses it did, and you cannot find defendant guilty of any negligence in this respect unless you further find from the greater weight of the evidence that it thereafter blocked the road crossing for a period of five minutes or more before the passenger train collided with the horse and buggy," (3) "that there is no evidence that the crossing signals were not given;" and (4) "that defendant had the right to run the passenger train at the rate of speed as disclosed by the evidence."

The court refused defendant's instruction withdrawing from the consideration of the jury the issue of negligence under the "last chance" rule.

Plaintiff complains of defendant's second instruction on the ground that it erroneously curtailed the duty the law imposed on the operators of the freight train to exercise reasonable care to avoid injuring .

persons and animals lawfully on the public crossing. In 1911, the Legislature enacted a statute (see Laws, 1911, p. 153) forbidding the occupation of a public crossing by a railroad train or cars for a longer period than five minutes. Under this statute, it would be negligence, *per se,* for trainmen to allow a crossing to be blocked a longer time and it may be conceded, on the other hand, that one of the purposes of the statute was to allow to trainmen the reasonable exercise of the privilege to obstruct a crossing for a time within that specified as the maximum limit and that no negligence could be predicated of a reasonable exercise of such lawful right. The statute, however, was not intended to supersede or impair the common law duty of the operators of trains to exercise reasonable care at public road crossings which means care commensurate with the dangers peculiar to a given crossing. As is said in one case, "Where a railroad crossing is especially dangerous, it is incumbent on the company to exercise care commensurate with the danger." [Railroad v. Gardner, 131 S. W. (Ky.) 787.] In another that the degree of care required of railroads at public crossings depends upon the facts and circumstances of each particular case, and in others that "the fact that a statute may prescribe one precaution will not relieve the railroad company from adopting others, which may be dictated by common prudence so as to safeguard the public using the crossing over its tracks." [White, Personal Injuries on Railroads, sec. 887, p. 1297.]

If the facts and circumstances in the instant case would justify a reasonable inference that peculiar danger lurked at this crossing which should have been known to the crew of the freight train and that the likelihood of such danger being enhanced by any but the shortest possible obstruction of the crossing should have been anticipated, we would hold that the court erred in declaring as a matter of law that the crew

had a right to block the crossing for five minutes or for any other time than would be reasonable in view of all the circumstances of the situation. But on the hypothesis that the obstruction had not continued five minutes we perceive nothing in the facts and circumstances disclosed to support an inference of a lack of reasonable care on the part of the crew of the freight train. This was an ordinary country road crossing and there was no apparent reason for the crew to refrain from coupling the train together until after the passenger train, which was known to be at hand, had passed. It would be unreasonable to think they should have anticipated the possibility of a driverless horse straying into a place of danger on the crossing in that brief period. It may be true, as suggested by plaintiff, that when the horse reached the obstruction he was in a trap, but the controlling fact is that he reached that place through the negligence of his intoxicated and unconscious driver after the train had been coupled and under circumstances which reasonable care on the part of the trainmen would not have anticipated. They were entitled, until the contrary fact appeared, to indulge in the presumption that the driver of a horse and vehicle would act with reasonable care in approaching the crossing and would not fall asleep and allow his horse to stand on the crossing in the path of danger. Had the driver been in possession of his senses the crossing signal given by the approaching engine would have given him ample opportunity either to remain in or drive to a place of safety. The horse would not and could not have become entrapped if the driver had performed his duty. Under the facts hypostatized in the instruction we have no hesitation in saying as a matter of law that defendant was not negligent in the occupation of the crossing and it was not error for the court so to declare to the jury.

Defendant's third instruction was not prejudicial to any right of plaintiff. The fact was indisputably established that the statutory crossing signals were given by the engineer of the passenger train and it was not error to restrict the jury's consideration of the case to evidentiary issues.

Nor do we find error in defendant's fourth instruction. The argument of plaintiff against this instruction is answered in the following quotation from the opinion of LAMM, J., in McGee v. Railroad, 214 Mo. l. c. 541:

"It has always been held by this court that in the country, between stations, away from congested populations, it is not negligence for passenger trains to run at a rapid speed over road crossings. If this long-established and well-known interpretation of the law was not satisfactory to the Legislature, it must be conclusively presumed that it would have taken up the question of rapid transit under the modern demands of commerce and established a legislative rule regulating train speed at country crossings."

There is some question as to whether the court did refuse to give the second instruction asked by plaintiff, but assuming that it was refused, the ruling was proper, since the instruction assumes as a proved fact that the damage to plaintiff was caused by negligence of defendant concurring with negligence of the servant of plaintiff. The existence of such negligence was controverted by defendant and is shown by the evidence to be a question about which there is room for an honest and reasonable difference of opinion. The rule always has been observed in this State that the court cannot assume in instructions to the jury the existence of controverted facts. [Matthews v. Railway, 26 Mo. App. l. c. 89; Dulaney v. Sugar Refining Co., 42 Mo. App. l. c. 662; Dodd v. Guiseffe, 100 Mo. App. 311.]

The evidence of plaintiff tends to accuse defendant of negligence in only one particular, viz., that the

engineer saw, or should have seen, the horse and buggy on the track in time to have avoided the collision, with the exercise of reasonable care. There is a serious question as to the sufficiency of the petition to tender the issue of such negligence but it is not necessary to discuss that question and we express no opinion upon it. A careful examination of the whole record discloses no error prejudicial to plaintiff at the trial and the judgment will be affirmed. It is so ordered. All concur.