185 So. 14

SQUYRES v. BALDWIN et al.

No. 34894.

Oct. 31, 1938.

Rehearing Denied Nov. 28, 1938.

Hudson, Potts, Bernstein & Snellings, of Monroe, and Hawthorn, Stafford & Pitts, of Alexandria, for applicant.

Cleveland Dear and Ward T. Jones, both of Alexandria, for respondent.

FOURNET, Justice.

William Squyres instituted this suit against L. W. Baldwin and Guy A. Thompson, trustees for the Missouri Pacific Railroad Company, to recover damages in the amount of $2,590.50 for injuries sustained by him when the car in which he was riding as a guest collided with the company's train of fifteen gravel cars which were being operated and switched by the defendant company across Louisiana Highway No. 165 on the spur track of the Alexandria Gravel Company near the town of Woodworth, in Rapides Parish, Louisiana.

Upon a showing that L. W. Baldwin had resigned his trusteeship, the suit, as to him, was dismissed by consent of counsel. The remaining defendant excepted to the mode of citation and excepted to the petition as disclosing no cause and no right of action. These exceptions were overruled and defendant answered denying liability and negligence on its part. In the alternative defendant pleaded, as a bar to recovery, the contributory negligence of the plaintiff.

The case was tried on its merits and the trial judge dismissed plaintiff's demand at his cost. On plaintiff's appeal, the Court of Appeal of the Second Circuit reversed and set aside the judgment of the trial court and gave judgment for the plaintiff in the sum of $2,065.50. We now have the case for review on writs granted by us on defendant's application.

The facts of the case, as found by the Court of Appeal, and which, from our review of the record, we find to be correct, are as follows, 181 So. 586:

"At the time of the accident both plaintiff and the driver of the automobile, Johnson, were domiciled in the town of Melder, in the southern part of Rapides Parish, Louisiana. Plaintiff worked for the Weaver Brothers Lumber Company at Weaver's Station, located a considerable distance north of Alexandria, Louisiana, and he made occasional week-end visits to his domicile. Two weeks prior to January 18, 1936, while plaintiff was in Melder, he

learned that Johnson would be in the city of Alexandria with his car on the night of the named date. Thereupon he informed the latter of his intention to return to his home on that night and requested permission to ride in the automobile from said city. This request was granted. It was agreed that the gas and oil necessary for the trip would be paid by plaintiff, Squyres.

"At about 9:40 o'clock on the night of Saturday, January 18, 1936, plaintiff reached Alexandria by train from his place of employment and was met at the railroad station by Johnson. Both entered the automobile and proceeded upon their journey toward Melder with Johnson driving. The route selected was south on U. S. highway 165 through Woodworth to Forest Hill, this being a paved highway and used by traffic traveling from Alexandria to Lake Charles, Louisiana, and to Beaumont and Houston, Texas; thence on a graveled road from Forest Hill to the domicile of the parties.

"It was snowing lightly while they were in and leaving Alexandria. After having traveled about three miles from the corporate limits of that city, the snow increased in volume and density and later became so thick and heavy that driving was rendered difficult. During the heaviest part of the snow storm Johnson had a clear vision in front of him, with the aid of the car's two headlights which were in perfect order and burning, of only 25 or 30 feet. However, the lights of approaching vehicles could be seen by him at a distance of about 100 feet. The night was extremely dark.

"The first stop in the journey was made in the town of Woodworth, Louisiana, at a closed service station, where the snow and ice were cleared from the windshield of the car. A distance of eleven miles had been traversed, and the time consumed in traveling it was approximately one hour. The cleaning process required a few minutes, during which period the parties discussed the advisability of remaining there or proceeding to their respective homes, situated about 12 or 14 miles away. The latter course was adopted because of the cold weather that then existed and the fact that there was no available building in Woodworth to shelter them during the remainder of the night.

"The automobile was again entered and the trip toward the south resumed. The dense and unusually heavy snow continued to fall and the ground in that vicinity was blanketed with it. Furrows appeared in that portion of it which lay on the highway, these having been made by vehicles. A strong wind was blowing from the north. Johnson occupied the driver's seat, while plaintiff sat at his right and held an overcoat over the window of the car's right door, the glass of which had previously been broken, to prevent the entrance of the snow and cold. Shortly after the resumption of the journey, the windshield and its attached wiper became burdened with snow and unusable, so Johnson lowered the window on his side and drove with his head protruding from the car. A distance of approximately one-fourth of a mile had been negotiated when the driver observed a low, black gravel car obstructing the highway. At that time, he was driving at a speed of from 12 to 15 miles per hour. His brakes, which were in good condition, were

immediately applied; but the intervening distance was too short to permit a stopping of the automobile before the occurrence of a collision. The movement of the train was responsible for the dragging of the automobile off the highway, after the impact, and its turning over.

"U. S. Highway 165, at and near the place of accident, runs generally in a north and south direction, and is straight on each side of the crossing for some distance. There are no buildings, trees or other view-obstructing agencies on either side of the road in that immediate vicinity. The usual 'Louisiana Law Stop' signs and small highway markers inform of the presence of the spur track. Defendant's main line tracks are located several hundred yards east of and parallel with the highway.

"Branching from the main line, the spur track travels in a southerly direction and then curves toward the west and courses diagonally and southwesterly across the paved highway at grade or level therewith. It is employed solely for and in the interest of the Alexandria Gravel Company. The frequency of its use depends upon the volume of business enjoyed by that company in connection with the operation of its gravel pit located west of the highway. At and about the time of the accident, it was being employed frequently.

"Johnson, the automobile driver, knew that a railroad crossing existed in the vicinity of Woodworth, but he did not know its exact location. Occasional trips had been made by him over the highway during a period of five years; however, he had never seen a train on the spur track be-

fore, and was of the impression it was not used.

"Defendant's train, when struck by the automobile, consisted of 15 low, gravel cars and the engine. Six employees were in charge of it, these being an engineer, fireman, conductor and three brakemen. The engine was equipped with electric headlights on both its front and rear, and these were burning. Operating signals were given by the brakemen to the fireman and the engineer from the rear of the train by means of electric lanterns.

"On the night in question, the train was backed from defendant's main line onto and along the spur track, and several cars were coupled to it before the highway crossing was reached. The backing was then continued across the highway where switching operations were performed in the vicinity of the gravel pit. In order that a car might be secured from a side spur track, it was necessary that the train be moved forward and then backward. Accordingly, the proceed signal was given by a brakeman. While the train was traveling forward at a speed of about four miles per hour, preparatory to the later backward movement, the collision resulted. At that time the highway practically divided the train, the car which was struck being the eighth behind the engine. The engine's emergency brakes were immediately thereafter applied, and a stop was effected. The highway was never free from obstruction from the moment the train backed across it until the impact occurred, a period of approximately five minutes; and further obstruction was intended and necessary by

reason of the contemplated additional backing. The whistle and bell of the engine were frequently sounded during the course of the switching operations. No flagman or lights were stationed at the crossing to warn approaching motorists that it was occupied."

Relator has assigned numerous specific errors to the judgment of the Court of Appeal, which are, in substance, that it found, contrary to the law and the evidence, (1) that relator's employees were negligent and that this negligence was the proximate cause of the injuries complained of, and (2) that the plaintiff was not guilty of such independent negligence as would bar his recovery.

As to the first ground, defendant contends that the presence of a railway car obstructing a crossing is in itself sufficient warning of the danger and that the railroad company is not negligent in failing to give additional warning of the obstruction, and cites in support thereof the following cases: Aaron v. Martin, 188 La. 371, 177 So. 242; Patterson v. Chicago, R. I. & P. R. Co., La.App., 175 So. 164; Plummer v. Gulf, M. & N. R. Co., La.App., 153 So. 322; Franklin v. Louisiana & A. R. Co., 10 La.App. 526, 120 So. 679; Seelhorst v. Pontchartrain R. Co., 11 La.App. 586, 123 So. 626; Hammers v. Colorado Southern, N. O. & P. R. Co., 128 La. 648, 55 So. 4, 34 L.R.A., N.S., 685; Pennsylvania Railroad Company v. Huss, 96 Ind.App. 71, 180 N.E. 919; Crosby v. Great Northern R. Co., 187 Minn. 263, 245 N.W. 31; Jones v. Atchison, T. & S. F. Ry. Co., 129 Kan. 314, 282 P. 593.

The present case raises a question of fact that was not involved in any of the cases cited by counsel for relator, and, in so far as we have been able to determine from a review of our jurisprudence, has never been presented to this court.

"The view generally taken is that the presence of a train of cars at a crossing is sufficient notice of obstruction and of danger, that the railroad company is not bound to give any further warning as to the presence of such obstruction, and that the trainmen have a right to assume that the operator of the vehicle will act in a reasonable way to avoid a collision. * * * *There is, however, authority for the view that conditions may be such as to require a warning where, in the darkness, a car obstructs a crossing."* 52 Corpus Juris, sec. 1782, pp. 190, 191. (Italics ours.)

On the same subject matter we find, in Huddy's Ency. of Automobile Law (9th Ed.) Vols. 7–8, pp. 129, 130, that " * * * in the absence of statutory requirement, the mere leaving of a train across the highway without lights or other signals to disclose its presence there is not per se negligence; as to injuries received by running into the train, the obstruction of the highway is not to be considered as the efficient cause of such injuries but merely as a condition which in and of itself furnishes no cause of action. *In order to charge the railroad with negligence in such case it must be shown that defendant's employees in charge of the train, in the exercise of reasonable care, ought to have known that on account of darkness the cars upon the crossing were such an obstruction that people traveling*

*upon the highway in automobiles properly equipped with lights and carefully operated at a reasonable rate of speed would be likely to come into collision with them."* (Italics ours.) See, also, Dobrowolski v. Holloway Gravel Co., Inc., La.App.1937, 173 So. 474; Plummer v. Gulf, M. & N. R. Co., Hampton v. Gulf, M. & N. R. Co., La.App., 153 So. 322; Trask v. Boston & M. R. R., 219 Mass. 410, 106 N.E. 1022; Miller v. Atlantic Coast Line R. Co., 140 S.C. 123, 138 S.E. 675, certiorari denied Camp Mfg. Co. v. Miller, 275 U.S. 556, 48 S.Ct. 117, 72 L.Ed. 424; Aymond v. Western Union Telegraph Co., 151 La. 184, 91 So. 671; Maher v. Louisiana Ry. & Nav. Co., 145 La. 733, 82 So. 872.

In A.L.R., Vol. 99, p. 1455, the exception is stated as follows:

*"* * * the railroad company's duty is not necessarily discharged under all circumstances if it fails to give warning in some form of the presence of the obstruction. The atmospheric conditions, obscurity, and darkness of the crossing, the length of time it is obstructed, and the nature of the highway, may require that warning be given if the company is to be found in the exercise of due care."* (Italics ours.)

In the case of Richard v. Maine Cent. R. Co., 132 Me. 197, 168 A. 811, where the controlling factors of the accident were identical with the facts presented in the case under review, except that in that case, instead of snow, fog obscured the driver's vision, the court held that [page 812] *"Whether such obstruction may be the proximate cause of an injury depends on the circumstances of each individual case, and particularly on whether or not the traveler in the exercise of due care should have seen it and have avoided a collision with it."* Commenting, the court said that:

*"* * * leaving an unlighted obstruction in a highway at night creates a hazard for travelers. It makes but little difference whether this be an excavation, Kendall v. City of Des Moines, 183 Iowa, 866, 167 N. W. 684, an automobile, Rice v. Foley, 98 Conn. 372, 119 A. 353, a railroad crossing gate, Record v. Pennsylvania Railroad Co., 76 N.J.Law, 800, 72 A. 62, or a freight car, Mann v. Central of Georgia Railway Co., 43 Ga.App. 708, 160 S.E. 131. * * * In Witherly v. Bangor & Aroostook Railroad Co., supra, this court laid down the rule,* page 7 of 131 Me., 158 A. 362, 363, *that: 'Negligent obstruction of a highway by a standing train is determined by whether, under all the circumstances, it is reasonable or otherwise.' Whether in the case before us the occupation of the railroad crossing without a warning to travelers was reasonable depended on a number of factors, the length of time that the train remained standing and the opportunity thus given the trainmen to display warning signals or to uncouple the train, the visibility, atmospheric conditions, the purpose for which the train stopped, and doubtless others."* (Italics ours.)

It was held in the case of Elliott v. Missouri Pac. R. Co., 227 Mo.App. 225, 52 S. W.2d 448, wherein the plaintiff collided with an unlighted and unattended train that blocked a crossing on a dark and foggy morning, that the *"* * * degree of care required of railroads at public crossings de-*

*pends on the facts and circumstances of each particular case"* [page 452], and in the case of Callison v. Charleston & W. C. R. Co., 106 S.C. 123, 90 S.E. 260, at page 263, that "\* \* \* *The degree of care should be commensurate with the danger."* (Italics ours.) See, also, Fife v. Chicago, etc., R. Co., 174 Mo.App. 655, 161 S.W. 300; Alewel v. East St. Louis & S. Ry. Co., Mo. App., 26 S.W.2d 869, 871.

In the Elliott v. Missouri Pac. R. Co. Case, the court found that the "\* \* \* atmospheric conditions were not normal \* \* \*" and commented as follows:

"\* \* \* it is well known to every motorist, of more than mere infantile experience, that with an obstruction of the color here shown, motionless and without noise, blending perfectly with the moist pavement beyond and the dark sky above, and the automobile lights filtering through the particles of mist, the coal cars would not be visible until almost upon them, and it then is everlastingly too late. \* \* \* The motorist knew a line of railway was there, it is true, but so far as appearances went, the street seemed to be open and unobstructed. *It is not a case of failure or neglect to see that which was visible, but of inability to see what was in fact an obstructed, but appeared to be an open, roadway."* (Italics ours.)

In the case at bar the falling snow was unusually heavy and dense, the ground and concrete pavement were covered with it and the night was as dark as Erebus itself. U. S. Highway No. 165 accommodates a heavy stream of traffic, as it is a main artery of travel in the state highway system, connecting central Louisiana with numerous points south and southwest thereof. The spur track is level with the pavement and used only occasionally for the benefit of the Alexandria Gravel Company and usually at night, while the railroad signs there located were, when the collision occurred, concealed by the falling snow. The low, black gravel cars were rendered a dull grey color in appearance, by reason of the snow which blanketed them, and blended perfectly with the dull, leadened background.

It is true that the engine's bell and whistle were sounded at times during the switching, but Johnson (the driver) and the plaintiff both testified that they heard no such signals and their testimony is supported by the fact that a strong northerly wind was blowing, which, according to the direction they were travelling, carried the sounds from them.

We are therefore of the opinion that defendant's employees in charge of the train, exercising reasonable care, ought to have known, on account of the darkness, the falling snow, and the cross-switching, that the train was such an obstruction that people travelling upon Highway No. 165 in automobiles properly equipped with lights and carefully driven at a reasonable rate of speed might have come into collision with them, and it was their duty to protect the travelling public against this peril, created by them, by giving such warning as the conditions warranted. Having failed to do so, they were negligent.

This brings up for consideration defendant's contention that plaintiff cannot re-

cover for the further reason that (1) plaintiff was not the guest of Johnson, the driver, but was engaged with him in a joint-adventure, and that, therefore, the contributory negligence of Johnson is imputable to him, and (2) in the alternative, that plaintiff was guilty of such independent contributory negligence as to preclude his recovery.

■■ "To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, *but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.*" 45 C.J. sec. 588, pp. 1031, 1032. See, also, Bofill v. New Orleans Ry. & Light Co., 135 La. 996, 66 So. 339, L.R.A.1915C, 419; Daull v. New Orleans Ry. & Light Co., 147 La. 1012, 86 So. 477; Churchill v. Texas & Pacific Railway Co., 151 La. 726, 92 So. 314; Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A.L.R. 148. (Italics ours.)

■■ On that question the Court of Appeal found as a fact that the plaintiff lacked the main and determinative factor that would have made him a joint-adventurer, not a guest, i. e., the right to control the car or the manner of its operation. In this conclusion we concur, and, therefore, under the above rule of law, plaintiff was not engaged with Johnson in a joint-adventure.

■■ As to defendant's alternative contention, it is the well settled jurisprudence of this state that the negligence of a driver of a vehicle cannot be imputed to his guest unless the guest himself is guilty of inde-

pendent contributory negligence. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253; Maritzky v. Shreveport Rys. Co., 144 La. 692, 81 So. 253; Daull v. New Orleans Ry. & Light Co., 147 La. 1012, 86 So. 477; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314.

■■ It cannot be argued that it was negligence on the part of plaintiff and Johnson to be on the public highway on the night in question. Merely because it was dark and snowing, the law did not require plaintiff and Johnson to remain at home, any more than it obliged the railroad to cease the operation of its cars; nor did it impose upon plaintiff the duty to get out and walk in the elements rather than continue by automobile. The law does require, however, that in order to recover in a case of this kind, the party injured, at the time of the injury, must have been exercising due and reasonable care and not in any way contributing to his injury by his independent negligence or carelessness.

■■ The record shows that Johnson was driving at a speed of between 12 and 15 miles per hour and could have seen the lights of an approaching car at a distance of 100 feet. He himself could see a distance of 25 feet ahead with his own lights, ample distance in which to bring the car to a complete stop in time to avoid any reasonable danger of collision. Plaintiff observed that Johnson was operating the car as carefully as it was possible to operate it. He (Johnson) was driving very slowly; it took him an hour to drive from Alexandria to Woodworth, a distance of 11 miles. He also observed that Johnson was keeping

a vigilant lookout and was doing all that a prudent operator of an automobile could do. He did not anticipate any sudden danger and had no reason to anticipate it. Moreover, while it is true that a guest in a car is under a duty to " * * * exercise reasonable care and diligence to protect himself by making it possible for the driver to avoid an accident, * * * it does not follow that he is constantly under obligation to look out for sudden or unexpected dangers that may arise ahead. He may rely reasonably on the driver to discharge that obligation." Delaune v. Breaux, 174 La. 43, at page 47, 139 So. 753, at page 755. See, also, Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314, 318.

We are therefore of the opinion that the Court of Appeal reached the correct conclusion in holding that the plaintiff was not guilty of any independent or contributory negligence and that the proximate cause of the collision that gave rise to the injury sustained by the plaintiff was the negligence of the defendant in failing to provide adequate warning to the travelling public of its cross-switching operations on U. S. Highway No. 165 under the prevailing conditions that existed on the night in question.

The Court of Appeal rendered judgment for the injuries sustained by the plaintiff in the sum of $2,065.50 and the defendant apparently does not contest the correctness of this amount, inasmuch as the question is not raised in their brief. Therefore, the award will not be disturbed.

For the foregoing reasons the writs granted by us in this case are recalled and the judgment rendered by the Court of Appeal is reinstated and affirmed. All costs are to be paid by the defendant.

ODOM, J., dissents.