ERNEST A. ARNOLD v. THE ALTON RAILROAD COMPANY, a Corporation, Appellant.—124 S. W. (2d) 1092.

Division Two, February 21, 1939.*

---

*NOTE: Opinion filed at May Term, 1938, May 3, 1938; motion for rehearing filed; motion overruled December 20, 1938; motion to transfer to Court en Banc filed; motion overruled at September Term, February 21, 1939.

1050

*Charles M. Miller* for appellant.

*Mont T. Prewitt, John C. Nipp, E. E. Thompson* and *William R. Barnes* for respondent:

1052

BOHLING, C.—This action is founded upon an alleged violation of the Federal Boiler Inspection Act (45 U. S. C. A., secs. 22-34); Ernest A. Arnold seeking a judgment in the sum of $75,000 against the Chicago & Alton Railroad Company, a corporation. Defendant prosecutes the appeal from an order sustaining plaintiff's motion for new trial; and the issues involve the submissibility of plaintiff's case, the admissibility of certain testimony and the giving of instructions on behalf of the defendant.

Plaintiff was a fireman on one of defendant's local freight trains running west out of Slater, Missouri. He was injured on February 28, 1934, while engaged in making a "drop switch" of an interstate freight car at Marshall, Missouri, by the glass in the clear vision window on his side of the locomotive cab shattering and particles thereof striking him in the eye and face. The front of the cab on the fireman's side had a door of approximately four feet seven inches in height and twelve inches in width. The dimensions are taken from the door, an exhibit, submitted under stipulation for the consideration of this court and do not correspond fully with some of the testimony bearing thereon. This door was also constructed to serve as

a window, having, in so far as here involved, a window space of a little over two feet in height by eight inches in width, commencing approximately eight inches from the top of the door. Within said opening and in a frame hung from the wooden frame at the top of the opening by means of hinges was a glass of approximately five inches in length, known as the clear vision window. Its regular equipment embraced a hook and screw eye, and, by means of braces on the door, it could be adjusted to three positions—closed, partly open and open. It opened outward and upward, and when closed slightly overlapped, a fraction of an inch, the lower glass. A short distance west of Slater plaintiff discovered that the hook of this window was missing and reported the fact to his engineer, Stechman. Plaintiff testified that at the time of the accident they were making a "drop switch" with the engine proceeding west pulling the car; that he was seated about three and one-half feet from the window, looking forward through the clear vision window, which was approximately on a level with his eyes; that the engine had attained a speed of twelve or fourteen miles an hour; that about twenty or twenty-five feet from the switch the engineer put the lever in reverse for the brakeman to uncouple the car; that this caused a sudden jar, the engine to buckle up, and the clear vision window to fly outward; that then when the engineer started forward it caused the clear vision window "to slam 'back' and 'break.' " A small piece of glass, about the size of a pin head, struck plaintiff's eye and another particle of glass struck him about an inch below the eye. An inspection of the window after the accident revealed the absence of the hook and screw eye. Plaintiff also testified that the wind was blowing from the west and that on the trip to Marshall the wind kept the clear vision window closed.

I. Defendant contends that (a) plaintiff failed to prove any negligent violation of the Federal Boiler Inspection Act and (b) plaintiff failed to offer any substantial evidence that a movement of the engine, such as described, would cause the clear vision window to move as claimed, break and a piece therefrom to strike plaintiff in the eye.

(a) Defendant does not question the absence of the hook and screw eye from the clear vision window. Section 2 of the Federal Boiler Inspection Act makes it ". . . unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb. . . ." [43 Stat. 659; 45 U. S. C. A., sec. 23; consult U. S. Compiled Stats.

1054

1918, secs. 8631 (36 Stat. 913), 8639a (38 Stat. 1192).] The act applies to and includes all parts and appurtenances of a locomotive. [Kidd v. Chicago, R. I. & P. Ry., Co., 310 Mo. 1, 24(a), 274 S. W. 1079, 1086(a).] The issue is not negligence *vel non* in the sense of lack of care. Aly v. Terminal Railroad Assn., 336 Mo. 340, 347(1), 78 S. W. (2d) 851, 853(1), states: "This is not a negligence case. . . . It was not necessary for plaintiff to prove negligence in order to make a case for the jury. If plaintiff adduced substantial evidence that the appliance failed to properly function and that this failure to function was the proximate cause of plaintiff's injury, then he made a case for the jury." [See, also: Henry v. Cleveland, etc., Ry. Co., 332 Mo. 1072, 1076(2), 61 S. W. (2d) 340, 341(2); Robison v. Chicago & E. I. Ry. Co., 334 Mo. 81, 85(1), 64 S. W. (2d) 660, 661(1), quoting: " 'Defendant is liable if its breach of duty contributed to cause the death;' " Crain v. Illinois C. Railroad Co., 335 Mo. 658, 664(2), 73 S. W. (2d) 786, 787(2); Fryer v. St. Louis-S. F. Ry. Co., 333 Mo. 740, 750(1, 2), 63 S. W. (2d) 47, 51 (1, 2).]

 (b) With reference to the contention that plaintiff's testimony is unbelievable and contrary to the physical facts. The argument, in effect, is that common knowledge of the scientific factors involved demonstrates the falsity of plaintiff's testimony and, therefore, it amounts to no evidence on the issue. Defendant offered the testimony of several witnesses experienced in the operation of locomotives to the effect that the movement of the locomotive described by plaintiff would not produce the result testified to by plaintiff and mentions in its argument that plaintiff's testimony stands uncorroborated. This goes only to the credibility of the witnesses and the weight and value of their testimony. Mention is also made of the fact that, under plaintiff's testimony, the wind exerted a pressure against the outside of the window and that it is inconceivable how the wind could aid in causing the window to open. This may be; but we do not necessarily understand from the entire record that this pressure was constant and this factor appears to be too variable, for one reason, to be of controlling influence. One of defendant's witnesses testified that in making drop switches he had observed the clear vision window to move out, come back and slam shut, but that the glass did not break. We need not dwell upon the factors involved in a ruling resting solely upon the physical facts; for instance, the tensile strength of the glass; the strain, if any, it was under at the instant; and the force exerted by the movement of the locomotive and, possibly, the wind. Under the record made we think we are not justified in ruling plaintiff's testimony so inconsistent with common knowledge of the scientific factors involved as to be inherently impossible and unbelievable. [Hardin v. Illinois C. Railroad Co.,

334 Mo. 1169 (2, 3, 6), 70 S. W. (2d) 1075.(4, 7, 14), 1085; Dempsey v. Horton, 337 Mo. 379, 384(2), 84 S. W. (2d) 621, 624(6).]

■ II. Plaintiff's motion for new trial was sustained "because the court erred in the giving of instructions for defendant and the admission of the evidence of witness Naber."

An appeal from an order granting a new trial sometimes presents legal issues differing from an appeal from a judgment. Speaking of that function of a motion for new trial to obtain relief in the trial court, Castorina v. Herrmann, 340 Mo. 1026, 1031(5), 104 S. W. (2d) 297, 300(11), states: "When the motion *is sustained* and the requested relief is granted, on reviewing such action, in considering the grounds stated in the motion upon which this action is based 'this court will be more liberal in upholding the court's action. . . . This is because the power of the trial court to grant a new trial is an exercise of its judicial discretion, which may be based upon matters known to the court (often said to be in the breast of the court) because the trial judge participated in the trial and knew what took place, much of which cannot be preserved in any bill of exceptions or record." See also: Stafford v. Ryan (Mo.), 276 S. W. 636, 637(2) (quoting Ittner v. Hughes, 133 Mo. 679, 692, 34 S. W. 1110, 1113, to the effect " '. . . this court may properly affirm such orders for errors that would probably not have been regarded as sufficient here to secure a reversal had the motion for a new trial been overruled' "); Rodan v. St. Louis Transit Co., 207 Mo. 392, 406(a), 105 S. W. 1061, 1065(a).

Eleven instructions were given by the court on behalf of defendant. The generality of the order granting the new trial (see Sec. 1003, R. S. 1929, Mo. Stat. Ann., p. 1269) does not necessarily call for their discussion *seriatim* and in detail.

■ Defendant's Instruction C was a cautionary instruction, being identical in thought with Instruction "D1" (with the last two sentences of said Instruction "D1" omitted) in Schmitt v. St. Louis Transit Co., 115 Mo. App. 445, 448, 90 S. W. 421, 422, and there stated (l. c. 453 and 424, respectively) to be an "admirable admonitory charge." [Consult Fife v. Chicago & A. Railroad Co., 174 Mo. App. 655, 660, 161 S. W. 300, 302.] However, there are rulings to the effect that the giving or refusing of instructions of a cautionary nature rests largely in the discretion of the trial court; that litigants are not entitled to such instructions as a matter of right and they should be used with caution. [Wolfson v. Cohen (Mo.), 55 S. W. (2d) 677, 680(11, 12); Johnson v. St. Louis & S. Ry. Co., 173 Mo. 307, 73 S. W. 173, 177; Beasley v. Jefferson Bank, 114 Mo. App. 406, 412, 89 S. W. 1040, 1041; Hely v. Hinerman, 208 Mo. App. 691, 696, 236 S. W. 698(2).]

Plaintiff's petition and testimony predicated recovery upon the defective condition of defendant's clear vision window, the shattering of the glass therein and particles thereof striking and injuring plaintiff. Three of defendant's instructions directed a verdict for defendant on the sole or stressed hypothesis, differently phrased, that plaintiff's injury was not caused by glass from the clear vision window and another precluded a verdict for plaintiff unless the finding be that plaintiff's injury was so caused and the breaking of the glass was due to the absence of the hook on said window. Several of defendant's instructions told the jury the burden rested upon plaintiff to prove his case by a preponderance of the credible evidence. One was a general instruction on the subject. Another informed the jury the burden was upon plaintiff to establish that glass from the clear vision window injured plaintiff, and that they should not conjecture or guess as to whether or not plaintiff was so injured. Another precluded a verdict for plaintiff unless plaintiff established specified essential facts by a preponderance of the credible evidence.

Repetition in or elaboration on the same proposition of law in different instructions is not ordinarily sufficient grounds for reversing and remanding a cause upon appeal (Ruth v. Knight (Mo.), 55 S. W. (2d) 682, 684(6), and cases cited); but such practice is not commended (Oliver v. Morgan (Mo.), 73 S. W. (2d) 993, 995(4) ), and has been condemned (Reeves v. Lutz, 191 Mo. App. 550, 559, 177 S. W. 764, 765(2); Fantroy v. Schirmer (Mo. App.), 296 S. W. 235, 238(5); Miller v. Williams (Mo.), 76 S. W. (2d) 355, 357(7), stating: "It [the court] also unduly emphasized the burden of proof by giving two instructions on the subject").

The trial court observed the witnesses and the jury, and after deliberation may have been influenced by the above authorities in considering defendant's instructions prejudicial to plaintiff and warranting the granting of a new trial. If so, the instant record does not justify our interference with the ruling.

One of plaintiff's complaints is that certain of defendant's instructions are negative in form and the converse, in certain respects, of plaintiff's given instructions. Plaintiff here stresses Doody v. California Woolen Mills Co. (Mo.), 216 S. W. 531, 535(9); Best v. Atchison, T. & S. F. Ry. Co. (Mo. App.), 76 S. W. (2d) 442, 444(2); Humphreys v. Chicago, M., St. P. & P. Railroad Co. (Mo. App.), 83 S. W. (2d) 586, 591(17). Kirkpatrick v. American Creosoting Co., 225 Mo. App. 774, 788, 37 S. W. (2d) 996, 1004(22, 24), mentions other cases. The Doody case rules the refusal of an instruction offered by defendant which is "but the converse" of an instruction given on behalf of the plaintiff is not error; and rulings in the other cases mentioned conform therewith. They do not hold that the giving of an instruction directing a verdict for defendant which correctly

submits the converse of an instruction directing a verdict for plaintiff constitutes reversible error. Woods v. Southern Ry. Co. (Mo.), 73 S. W. (2d) 374, 377(6), expressly approved the giving of a converse instruction. In criminal causes, we are committed to the proposition that the refusal of a defendant's instruction correctly submitting the converse of the State's main instruction is reversible error; unless, of course, the State's instructions clearly submit the converse of the essential issue or issues involved. State v. Ledbetter, 332 Mo. 225, 228(3), 58 S. W. (2d) 453, 454; State v. Fraley 342 Mo. 442, 116 S. W. (2d) 17, citing cases and stating reasons, and handed down herewith. We understand the credibility of the witnesses and the weight and value of their testimony is for the jury on issues resting upon oral testimony; and the instant issue differs from issues involving instructions covering pleaded affirmative defenses calling for substantial testimony to submit the issue. We need not pursue the matter. Plaintiff refers us to no authority holding (and we perceive of no reason why) the giving of converse instructions correctly declaring the law is error necessitating a new trial.

III. Defendant's witness Naber was a practicing lawyer of Kansas City, Missouri. Plaintiff had instituted an action against the Brotherhood of Locomotive Firemen and Enginemen, whom Mr. Naber represented in his professional capacity. During the pendency of that litigation he made trips (two affirmatively appearing of record) to Slater, plaintiff's home, and vicinity in making investigations, etc., became acquainted with plaintiff, and testified that plaintiff's reputation for truth and veracity was bad.

Ordinarily the impeaching witness is one who resides in the same neighborhood as the party whose reputation is the subject of inquiry. We have said, in connection with the testimony of such a witness who states he is acquainted with the party's general reputation, that the court will not determine, by a preliminary inquiry, his testimonial qualifications (State v. Fairlamb, 121 Mo. 137, 152, 25 S. W. 895, 899); because, in the usual order of things those who reside in the same neighborhood may be assumed to have testimonial qualifications covering the reputation of their neighbors (Ulrich v. Chicago, B. & Q. Railroad Co., 281 Mo. 697, 705, 220 S. W. 682, 684(3). However, testimonial qualification revolves around the witness' knowledge of the party's general reputation, in turn dependent upon the means and extent of his information rather than his place of residence; and plaintiff's contention based upon the witness' place of residence is disallowed. [70 C. J., p. 925, nn. 26, 27; 28 R. C. L., p. 630, n. 20; 6 Jones on Evidence, p. 4773, n. 4; consult the Ulrich case, supra; and State v. McLaughlin, 149 Mo. 19, 32, 50 S. W. 315, 320(14).] However, plaintiff's objection also embraced the ground the witness

had not shown himself qualified on the issue. There is authority that a mere visit of inquiry or a casual sojourn, or a conversation with a resident who reports the reputation affords inadequate opportunity for one to qualify. [1 Wigmore on Evidence, p. 1108, n. 1; consult 1 Greenleaf on Evidence, p. 587, sec. 461d(3).] We think the Missouri cases stressed by the parties—defendant, the Ulrich case, supra; plaintiff, Johnson v. Martindale (Mo. App.), 288 S. W. 970(3)— do not rule the issue. In the Ulrich case the issue involved the place of reputation (704 and 684(1), respectively) and the court held that the inquiry was not to be arbitrarily restricted to the neighborhood of the party's domicile but could properly embrace his reputation at the place of his former residence where, after removal therefrom, the party continued to visit his old home, ply there his vocation and was as well and generally known as he had been for a great many years (704(I) and 684(3, 4) respectively). In the Johnson case testimony concerning the reputation of a party at a place where he had not lived for fifteen years was held inadmissible—his reputation as of the time of his residence, because too remote; and his reputation as of the time of trial, because he had visited his former domicile only "occasionally." The cases cited by plaintiff (for instance, Commonwealth v. Baxter, 267 Mass. 591, 592, 166 N. E. 742 (1, 2); State v. Miller, 72 Wash. 174, 175, 130 Pac. 356(2) involving an investigator acting as agent for a party litigant for the purpose of acquiring information to be adduced at the trial are not this case. General reputation is a fact; and assuming, but. not necessarily ruling, that sufficiently detailed and extended inquiry and investigation may impart to one testimonial qualifications on the issue, the trial court should be privileged to exercise some discretion in the matter (Wigmore on Evidence, supra), and its rulings should not be disturbed in the absence of an abuse thereof (the Ulrich case, supra).

From what we have said, the order granting a new trial should be and is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.