## AARON v. MARTIN et al.

### No. 1688.

Court of Appeal of Louisiana. First Circuit.

March 5, 1937.

A. Sidney Burns, of Lake Charles, for appellant.

J. H. Inman, of Ponchatoula, and Carroll Buck, of Amite, for appellees.

OTT, Judge.

The suit is for damages in the sum of $2,585 which plaintiff claims to have sustained when an automobile in which he was riding with one John Brock collided with a boxcar at the point where the paved Highway No. 51 crosses a switch track running westerly from the main line of the Illinois Central Railroad to a veneer mill operated by the defendant Martin, in which collision plaintiff suffered personal injuries. The suit is against Martin, who owns and operates a locomotive over said switch track in connection with his veneer plant, and against the Illinois Central Railroad Company, which, it is alleged, owns or leases said switch track. The collision occurred on June 5, 1935, at about 9 o'clock p. m. while plaintiff and the driver of the car, Brock, were on their way to Manchac for supper. They were traveling south on said paved highway, and had just come onto said highway from an ice plant a short distance below the town of Ponchatoula, and some 160 yards above the crossing.

It is alleged that the collision was caused by the negligence of the employees of defendant Martin, while operating said locomotive for the joint benefit of both defendants in moving a train of freight cars over said spur track and across said highway just as the automobile in which plaintiff was riding was approaching said crossing; that the night was dark and no flagman was stationed at said crossing, and no lights were displayed to warn those traveling on said highway that said train was being operated across said highway and that said crossing was blocked; that said spur track is seldom used, and the color of said freight cars was dull or drab and would not reflect the light from an oncoming automobile; that he and the driver of said automobile were keeping a proper lookout, but because of the nonapparent nature of the danger, the automobile in which plaintiff was riding collided with said freight cars with a violent impact causing the injury complained of.

Both defendants filed exceptions of no cause or right of action. The court sustained the exception filed by Martin, and plaintiff took an appeal from that judgment. This court reversed the judgment sustaining the exception as to this defendant and remanded the case for trial. 167 So. 106.

After the remand of the case, the court overruled the exception filed by the other defendant, whereupon both defendants filed answer. The case went to trial on the issue thus joined and resulted in a judgment in favor of defendants, ·from which judgment of dismissal plaintiff has again appealed.

█ The defendant the Illinois Railroad Company is urging in this court its exception of no cause or right of action, insisting that this court was in error in overruling the exception of Martin. We see no reason to change our ruling on the legal points raised in the exception filed by Martin, and as the other defendant is pressing the same point that was urged in Martin's exception, we think the trial judge was correct in following our opinion and in overruling the exception filed by the railroad.

In their answer both defendants deny any negligence on their part. The railroad company denies that it was in any way responsible for the acts of the train crew operating the locomotive and cars on the spur track where the collision occur-

red. It avers that the collision was caused by the proximate negligence of Brock, the driver of the automobile, in failing to comply with the act regulating traffic on the highways in failing to keep a proper lookout; that plaintiff was guilty of negligence in failing to note the presence of the train on the crossing and in failing to warn the driver of the presence of the train and in permitting the driver to go on said crossing without stopping, looking, and listening. Martin's answer charges plaintiff and the driver of the automobile with contributory negligence in the same respects as did· the railroad, and further avers that the freight cars had pre-empted the highway, and that light signals were given by the operatives of the train which should have been seen by plaintiff and the driver of the automobile.

In the alternative, the railroad asked that, if any judgment was rendered against it, the same judgment be rendered in its favor against Martin, whom it called in warranty. In order to protect its call in warranty, this defendant has taken a cross-appeal against its codefendant, Martin, from the judgment of dismissal.

The trial judge did not assign any reasons for judgment, and we are therefore unable to determine whether he dismissed plaintiff's suit because of a failure to show negligence on the part of either defendant, or because of the contributory negligence of plaintiff and the driver of the car.

█ The spur track crosses the paved highway diagonally, extending from the main line of the railroad in a northwesterly direction across the highway which runs southerly parallel with the railroad. The track is level with the paved part of the highway, and there are some trees and underbrush on the west side of the highway, to a certain extent at least, obstructing the view on the west side where the spur track leads out to the veneer mill. There were no stop signs at this crossing at the time and, it being a switch track, none were required under section 4 of Act No. 12 of 1924. It further appears that the switch track was seldom used, only a few cars per week being switched over the crossing. Ordinarily a railroad, in carrying on its usual switching operations, is not required to station a flagman nor place lights or other signals at a crossing to warn approaching motorists of blocking the crossing with its cars, unless the conditions at the crossing are of such an unusual and dan-

gerous nature as to make it necessary to take such precautions. Plummer v. Gulf, M. & N. R. Co. et al. (La.App.) 153 So. 322; Gulf, M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110. However, we believe that the nature of this crossing was such as to require those operating trains over the crossing and blocking it, to protect traffic on the highway by proper lights, signals, or flagmen.

There is some doubt from the evidence whether or not the crossing was completely blocked as plaintiff approached in the automobile driven by Brock. The plaintiff and Brock testify that the freight cars were pushed out onto the highway from the west side without lights or warning just as they approached the crossing; that they were then too close for the driver to stop the automobile; that the driver pulled the automobile to the left in an effort to avoid hitting the car on the switch track, but the automobile struck the end of the boxcar on the right side where plaintiff was sitting, demolishing the automobile and injuring plaintiff. They claim that these freight cars were pushed from the west side across the highway directly in front of them and without any warning whatever.

Two of the train crew testified for defendants to the effect that the locomotive had coupled up with two boxcars on the west side of the road; that they (the engineer and flagman) let the air out of these two cars and three other freight cars on the track on the east side of the highway; that the engineer got back in the cab and the flagman stood in the highway with a lantern to flag traffic; that on a signal from the flagman, the engineer pushed the two cars across the highway and coupled up with the three cars on the switch track east of the highway; that the locomotive then pulled these five cars back toward the west side with the view of spotting an empty boxcar on the east end of this train of five cars for loading at the mill. The flagman says that the train had gone about thirty feet back toward the west side of the highway when the automobile in which plaintiff was riding crashed into the middle car of this train of cars on the north side; that he was standing on the south side waving his lantern to warn traffic from the south; and that he held his lantern low enough for it to be seen under the freight car by an automobile approaching from the north.

Whether the train of cars was moving east as claimed by plaintiff and his witness, or moving west as claimed by these two members of the train crew, we are satisfied that the automobile in which plaintiff was riding struck the side of the freight car. This being true, considering the possible speed of the automobile and the train, it is obvious that the freight car had the crossing practically blocked as the automobile approached. Neither plaintiff nor the driver is certain as to what part of the freight car was struck, but the fact that it struck on the side is shown not only by these two members of the train crew, but plaintiff's witness Hebert says that he examined the boxcar the next morning and saw where it had been struck about next to the door, which was on the side of the car and not on the end.

There were no lights on any of these boxcars. A disinterested witness, Blasdell, testified that he drove south on the highway just a few minutes before the accident and the locomotive was pushing some freight cars from the west; the negro flagman waved a lantern on the highway for him to stop; that the headlight from the engine was partly on his car when he stopped. Two or three witnesses for plaintiff testified that they were driving north on the highway just before the accident and there were some boxcars pushed up to within two or three feet of the pavement on the west side with a locomotive attached and emitting steam; that there were no lights on the boxcars, nor did they see any flagman or other warning signals.

This does not prove that the flagman was or was not protecting the crossing with his lantern as he claims during these switching operations as plaintiff and Brock approached. After all, it depends a great deal on the word of the flagman himself with some corroboration by the engineer as to exactly what he did do in the way of warning traffic of the blocking of the crossing during the switching operations.

■ Conceding, however, that the train crew did not take proper precautions to protect the crossing during these switching operations, we are of the opinion that plaintiff and the driver of the automobile were guilty of such contributory negligence as to bar a recovery. The freight cars were on the crossing before plaintiff and Brock reached it. The crossing was practically, if not completely, blocked as they approached. The train was moving much

more slowly than the automobile. The highway is perfectly straight at this crossing. There was nothing to prevent plaintiff and the driver of the automobile from seeing a freight car across the highway. If the driver was going at a proper rate of speed and had his car under control, there is no reason why he could not have stopped in ample time to avoid running into as large an object as the side of a freight car. From the position and condition of the automobile after the collision, it is evident that it struck the side of the boxcar with a violent impact indicating that it was traveling at a good speed.

But plaintiff contends that, even though Brock, the driver of the automobile, was guilty of contributory negligence in failing to see the freight cars at the crossing in time to stop, plaintiff, as a guest of Brock, cannot be precluded from recovery on that account, citing Churchill v. Texas & Pacific Ry. Co., 151 La. 726, 92 So. 314, and Delaune v. Breaux, 174 La. 43, 139 So. 753, 755. Plaintiff was sitting on the front seat with Brock and had a better opportunity of seeing the train at the crossing than Brock, yet he admits that he did not see it until within 30 or 40 feet of the crossing, too late for the driver to stop; that he did not warn the driver of this sudden and unexpected danger which loomed up in the highway before them.

■ The duty of a guest under such circumstances, assuming that plaintiff was a guest, is clearly and succinctly stated in a recent work, 5 American Jurisprudence, p. 776, § 486, as follows:

"It is the duty of one riding in an automobile with another, on approaching a railroad crossing, to use ordinary care for his own protection and safety by looking or listening a reasonable distance from the railroad tracks for the approach of a train, so that he can, by the exercise of ordinary care, inform the driver of the approaching train in time to prevent a collision; and if he sees, or can see the approaching train if he looks, in time to inform the driver of the approach of the train and to cause the driver to stop the automobile and thereby prevent the collision, but fails to do so, he is guilty of contributory negligence as a matter of law."

The principle of law above quoted is also the law of this state on this subject as will be seen from the following excerpt taken from the case of Delaune v. Breaux, supra, as follows:

"However, while it is unquestionably true that a guest, as has often been held, must exercise reasonable care and diligence to protect himself by making it possible for the driver to avoid an accident, but it does not follow that he is constantly under obligation to look out for sudden or unexpected dangers that may arise ahead. He may rely reasonably on the driver to discharge that obligation. Where, however, the guest is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver, it is the duty of the guest to warn the driver of it at once, and if the guest fails to do so, he is guilty of negligence contributing to the accident and cannot recover."

Our conclusion is that both plaintiff and the driver were guilty of such contributory negligence as to bar a recovery in this case.

For the reasons assigned, the judgment is affirmed, at the cost of appellant.