177 So. 242

**AARON v. MARTIN et al.**

No. 34393.

Nov. 2, 1937.

A. Sidney Burns, of Lake Charles, for appellant.

J. H. Inman, of Ponchatoula, for appellee Edward B. Martin.

Carroll Buck, of Amite, Lemle, Moreno & Lemle, of New Orleans, E. C. Craig, of Chicago, Ill., and C. N. Burch, H. D. Minor, and C. H. McKay, all of Memphis, Tenn., for appellee Illinois Cent. Ry. Co.

ODOM, Justice.

This is a suit prosecuted by plaintiff to recover from the defendants Martin et al. damages for personal injuries sustained by him when an automobile in which he was riding as a guest of the driver collided with a box car at a point where a railroad switch track crosses a public highway. Plaintiff's demands were rejected by the trial court and his suit dismissed. On his appeal to the Court of Appeal, First Circuit, the judgment of the lower court was affirmed, and he applied for writs, which were granted.

The case was before the Court of Appeal twice, first on appeal from a judgment sus-

taining defendant's exception of no cause of action, and later on appeal from a judgment against plaintiff on the merits. The latter judgment is before us for review.

In each of its opinions, the Court of Appeal stated clearly the issues involved, as set forth in the pleadings. Its first opinion is published in 167 So. 106. Its second is reported in 172 So. 840.

Because the issues involved are so clearly and correctly stated in these opinions, we shall not restate them here, other than to say that plaintiff charges in his pleadings and now contends that the collision between the automobile in which he was riding and the box car was due solely to the fault and negligence of the defendants, and that he was guilty of no negligence at all. Defendants in answer alleged that they were guilty of no negligence, and, in the alternative, if they were, plaintiff cannot recover on account of his own contributory negligence.

The Court of Appeal (172 So. 840, 842) held that the train crew, which was under the defendant Martin's supervision, "did not take proper precautions to protect the crossing during these switching operations" (see its opinion on the merits), but held that "the plaintiff and the driver of the automobile were guilty of such contributory negligence as to bar a recovery." This holding was grounded upon its findings that:

"The freight cars were on the crossing before plaintiff and Brock reached it. The crossing was practically, if not completely, blocked as they approached. The

train was moving much more slowly than the automobile. The highway is perfectly straight at this crossing. There was nothing to prevent plaintiff and the driver of the automobile from seeing a freight car across the highway. If the driver was going at a proper rate of speed and had his car under control, there is no reason why he could not have stopped in ample time to avoid running into as large an object as the side of a freight car. From the position and condition of the automobile after the collision, it is evident that it struck the side of the box car with a violent impact indicating that it was traveling at a good speed."

Plaintiff was riding on the front seat of an automobile owned and driven by his friend, Brock. He says he was Brock's guest, and that even though it be held that Brock was guilty of such contributory negligence as would bar his recovery in case he should sue for damages, he, plaintiff, is not precluded from recovery on that account. The Court of Appeal (172 So. 840, 843) disposed of that contention, using the following language:

"Plaintiff was sitting on the front seat with Brock and had a better opportunity of seeing the train at the crossing than Brock, yet he admits that he did not see it until within 30 or 40 feet of the crossing, too late for the driver to stop; that he did not warn the driver of this sudden and unexpected danger which loomed up in the highway before them."

We have reviewed the testimony and given due consideration to the points of law involved, and our conclusion is that the

judgment of the Court of Appeal, affirming that of the district court, is correct. And in this connection we take occasion to say that we have not given as much attention to the question whether defendants were guilty of negligence as we have to the other points involved, but have assumed, as found by the Court of Appeal, that defendant Martin and the train crew "did not take proper precautions to protect the crossing during these switching operations" and were, therefore, guilty of negligence.

Even so, plaintiff is barred recovery. Both plaintiff and Brock were guilty of the grossest kind of contributory negligence. Brock, the driver of the car, was not only negligent; he was reckless. The accident happened at night, but the headlights and brakes of the automobile were in perfect condition. The highway was straight, paved, and its surface was dry. And yet, he ran the automobile against the side of a box car which blocked the crossing. The condition of the automobile after the wreck shows that it hit the box car with terrific force. Plaintiff so alleges in his petition. It was not a head-on collision. Brock saw the box car just before striking it and swerved to the left, so that the damage to the automobile was on the right-hand side. He says the box car was moving across the road and dragged his car. But it is evident that the damage was not caused by the dragging of the car, if there was any dragging of it, but by the impact. Brock says that the reason he ran into the box car was that when he first saw it he was so close to it that he could not stop. Plaintiff testified that although he was riding on the front seat with Brock, he did not see the box car until the automobile was so close to it that it would have been impossible for the driver to avoid the collision, and he thought he saw it about the time Brock did.

This being true, the question why they did not see the box car naturally arises. Plaintiff in his petition and in his testimony avows that neither Brock nor he was guilty of negligence. In paragraph 9 of his petition, plaintiff alleged that "at the time hereinafter complained of the said locomotive *was in the act of moving a freight car, or several freight cars, of the defendant * * * on said spur track,"* and in paragraph 14, that the automobile "was being operated on said Highway in a lawful manner approaching the said spur track which crosses said road as hereinabove alleged." Paragraph 15 of the petition reads as follows:

"That the aforesaid train, consisting of said locomotive and the said freight cars was being operated on said spur track at said point just below Ponchatoula in Tangipahoa Parish, Louisiana, *in the act of crossing the said road, as said automobile was approaching said spur track."*

As to why neither Brock nor the plaintiff saw the box car, it is alleged in paragraph 17 of the petition that:

"The color of said freight cars is dull and drab, *and such as does not reflect the light from an oncoming automobile."*

In paragraph 18 it is alleged that "the said spur track is seldom used, and the danger resulting from said acts of said defendants was not apparent to your pe-

titioner or to the operator of said automobile."

Paragraph 19 of the petition reads in full .as follows:

*"That by reason of the foregoing facts* the said automobile in which petitioner was riding collided with said freight car ·of said defendant Illinois Central Railroad Company with *a violent impact,* by reason ·of which your petitioner received the injuries hereinafter complained of." (Italics throughout are the writer's.)

The "foregoing facts" alleged as to why plaintiff and the driver of the car did not see the box cars, were that they were not lighted and that the color was drab and did not reflect the light from the on-coming .automobile.

By this we do not mean to say that the plaintiff did not allege that the crossing was not guarded by a flagman with a lantern as it should have been. He did allege that there was no flagman, no lantern, no other warning signal there. Hence defendant's negligence in not guarding the crossing. Then he states the reasons why the box cars were not seen. They were not lighted and were of a drab color.

Nowhere in his petition is it alleged that the box cars suddenly emerged out of darkness on to the road, and for that reason could not be seen in time to avoid the collision. But in one paragraph it is said that the locomotive "was in the act of moving a freight car, or several freight cars * * * either to or from the said veneer plant on said spur track," and in another,

that the train "was in the act of crossing the said road as said automobile was approaching said spur track."

We have read with care and much interest the brief filed by counsel for plaintiff-appellant. We find that he does not contend that the failure of Brock and the plaintiff to see the box car in time to avoid striking it was due to its sudden and unexpected emergence on to the highway. But he seems to concede that the box car with which the automobile collided was on the highway and that the reason it was not seen was that it was of a drab color, for he says on page 6 of his brief:

"The preponderance of the evidence shows that the box car was of a dull drab color which did not reflect the light of an oncoming automobile. That it was *on the track* which is nearer to parallelling the highway than running straight across. The angle at which the box car *was on the highway,* as shown by the blue print in the record, was such that if any light from the automobile was reflected, it would not have been reflected back to the driver or to the guest, because the box car *was extending from Northwest to Southeast, forming an obtuse angle with the highway from the point of view of the autoist."* (Italics are the writer's.)

He says that the train crew "was in the act of switching box cars of the defendant railroad company on railroad company's spur track."

In the syllabus which he prepared, counsel says:

"Motorist driving automobile at night into side of unlighted and unattended mov-

ing box car, dull and drab of color, unlighted and unprotected, being pushed or pulled diagonally or transversely over frequently used paved highway, on seldom used spur track without grade, warning signs or warnings, with locomotive up in woods, hidden by thicket, under circumstances which make box car very difficult of visualization; should be held not contributorily negligent as a matter of law under the special circumstances. See Kirk v. U. G. P. S. Co., supra [185 La. 580, 170 So. 1]."

We find in all this no suggestion that the motorists were trapped by the sudden approach of the box cars. It is true that both plaintiff and Brock testified that the freight cars were pushed out into the highway just as they approached the crossing. But no such allegation was made in the petition. The cause of action was not grounded upon that theory, but upon the proposition that defendants were negligent in that they failed to guard the crossing properly, and that they, plaintiff and Brock, were not guilty of contributory negligence because the color of the box cars was such that they could not see them.

Referring now to the facts disclosed by the record, we find that the surface of the paved highway was dry, that the automobile entered the main highway about 160 steps (probably 400 feet) from the crossing, from which point to the crossing it was straight; that plaintiff and Brock both say the automobile was moving about 20 or 30 miles an hour and that they were looking ahead, plaintiff explaining that he drove an automobile a great deal and was in the habit of looking ahead always; that its headlights and brakes were in perfect condition; that the automobile ran against the side of the box car, which was 40 feet long, striking it about midway between the front and rear ends; that it was in motion, being pushed along across the highway by the engine, which was some distance from the road, moving not more than 3½ or 4 miles an hour; that as the automobile approached the crossing a view of the engine, but not of the cars, was cut off by bushes growing on the side of the highway. .

The Court of Appeal (172 So. 840, 842), said in its opinion in one place: "It is obvious that the freight car had the crossing practically blocked as the automobile approached," and again, "the freight cars were on the crossing before plaintiff and Brock reached it. The crossing was practically, if not completely, blocked as they approached."

According to the testimony of two members of the train crew, the crossing was completely blocked. Explaining in detail the movements of the engine and the cars, they said there were three cars standing at the end of the switch track across the highway from the engine and two cars coupled to the engine; that the locomotive pushed the two cars across the highway, coupled them to the three, and they started back with the five, moving very slowly, not more than 3½ or 4 miles an hour, and that while thus moving the automobile crashed into the middle car, striking it at the door, or midway between the ends. Their testimony that the automobile struck the door of the car is corroborated by dis-

interested witnesses. Hence, we conclude that plaintiff and Brock were mistaken when they said the automobile struck the box car at or very near the end.

The Court of Appeal found, and our reading of the testimony convinces us that its finding on that point is correct, that the box car was in the road when the automobile was a sufficient distance from it to avoid striking it had they observed proper precautions and if the automobile was under proper control.

Clearly plaintiff and Brock were not confronted with a sudden emergency. The box car was in the road, had it practically, if not completely, blocked, before they reached the crossing. Evidently the driver was either not looking and oblivious to all danger, or he was driving at a high rate of speed.

Brock and plaintiff both say that they were looking ahead and that they saw the box car when they were about 40 feet from it, and that the car was moving not faster than 20 or 25 miles an hour. If that be true, the driver could have stopped before reaching the crossing. But from the condition of the car after the crash, according to the testimony and opinion of the garage man, it is evident that the automobile hit the box car with terrific force. In fact, Brock says that his car was so badly wrecked that he gave it away.

Unquestionably Brock, the driver, was guilty of the grossest kind of negligence, which was the main contributing cause to the accident. Plaintiff cites the case of Kirk v. United Gas Public Service Company, 185 La. 580, 170 So. 1. In that case

it was held that the driver of an automobile at night was not guilty of negligence because he failed to stop when he saw lying on the paved highway in front of him a small yearling, which he took to be a grease spot or splotch on the pavement. That case is distinguishable from this one in this, that the yearling was small and while lying flat on the surface of the road was not calculated to attract serious attention, whereas in the present case a box car, a very large object, loomed up across the road ahead of the driver. They were a sufficient distance from it to enable the driver to stop his car if he had been looking.

We are not impressed with the theory that the box car could not be seen on account of its drab color. It was not different in color from the average car of its kind. Certainly so large a moving object as a box car can be seen by one riding on the front seat of an automobile when or while in the road immediately ahead, especially on a clear night, when the headlights are in perfect condition.

But counsel for plaintiff says that the driver's negligence cannot be imputed to plaintiff, who was a guest in the car. That is true, and the principle is too well settled to need citation of authorities. But it is also settled that a passenger or guest in an automobile owned and driven by another may himself be guilty of such independent, contributory negligence as to defeat his recovery. Lorance v. Smith, 173 La. 883, 138 So. 871, 876. Delaune v. Breaux, 174 La. 43, 139 So. 753, 755. We think plaintiff was guilty of such inde-

pendent contributory negligence as bars his recovery. As was said by this court in Delaune v. Breaux, supra:

"A guest * * * must exercise reasonable care and diligence to protect himself by making it possible for the driver to avoid an accident."

In Lorance v. Smith, supra, we said:

"A guest or a gratuitous passenger in a motor vehicle cannot recover for injuries due to the negligence of his host if he is aware of and acquiesces in the negligence."

In that case we quoted approvingly the following from 42 C.J. 1170, § 948:

"(But an occupant of a motor vehicle may not) abandon the exercise of his own faculties and intrust his safety absolutely to the driver, regardless of the imminence of·danger, or the visible lack of ordinary care on the part of the driver to avoid all harm. If he fails to use ordinary care, including the exercise of his own senses of sight, hearing and perception, to protect himself under such circumstances, he is guilty of contributory negligence."

We also quoted the following from 2 Blashfield's Cyclopædia of Automobile Law, p. 1036: He must "exercise ordinary care to guard himself against injury from the hazards of the road." The following, taken from Vol. 5, American Jurisprudence, p. 776, seems to be a correct statement of the law on this subject which prevails not only in this state, but elsewhere:

"It is the duty of one riding in an automobile with another, on approaching a railroad crossing, to use ordinary care for his own protection and safety by looking or listening a reasonable distance from the railroad tracks for the approach of a train, so that he can, by the exercise of ordinary care, inform the driver of the approaching train in time to prevent a collision; and if he sees, or can see the approaching train if he looks, in time to inform the driver of the approach of the train and to cause the driver to stop the automobile and thereby prevent a collision, but fails to do so, he is guilty of contributory negligence as a matter of law."

Nothing in ·the above is in conflict with the ruling in the case of Delaune v. Breaux, supra, which is cited and relied upon by counsel for plaintiff. In that case this court held that a guest is not constantly under obligation to look out for sudden or unexpected dangers that may arise ahead. In the case at bar the appearance of the box car across the highway was not so sudden that it could not have been seen in time for plaintiff to warn the driver, nor should it have been an unexpected danger, for reasons which we shall presently state.

Plaintiff in this case was riding on the front seat. He could see what was ahead in the road as well as the driver could. He knew that the switch track was there, for he says he drove an automobile about a thousand miles a month and had crossed that track forty or fifty times within a few months prior to the accident. He was manager of an ice house built 6 feet from the spur track and about half a mile from the crossing. He knew that the spur track had not been abandoned, but was being used to switch cars. To say the least, he should have been on the lookout for cars on this

spur track. It was his duty as a matter of self-protection to be observant, and if the driver apparently was not aware of the presence of the track and the probability that it might be in use at the time, it was plaintiff's duty to warn him. Plaintiff could not shift the entire responsibility upon the driver. He knew that the driver should at least slow down at the crossing. Knowing the surroundings and circumstances as he did, it was not only his duty to look ahead, but to warn the driver to be cautious. He did nothing of the kind, but sat idly by and said nothing. He did not "exercise reasonable care and diligence to protect himself by making it possible for the driver to avoid an accident." Delaune v. Breaux, supra.

The writs granted in this case are recalled and the judgment of the Court of Appeal affirming that of the trial court is affirmed.

HIGGINS, J., takes no part.