64 So.2d 245 (1953)
222 La. 994
WHITE
v.
STATE FARM MUT. AUTO. INS. CO. et al.
No. 40694.
Supreme Court of Louisiana.
February 16, 1953.
Rehearing Denied March 23, 1953.
*246 Durrett & Hardin, Baton Rouge, for Joseph Edward White, plaintiff, appellee below and appellant.
Huckabay, Seale, Kelton & Hayes, Baton Rouge, for State Farm Mut. Auto. Ins. Co., defendant, appellant below and respondent.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Joseph Silvio and Great *247 American Indem. Co., defendants and respondents.
McCALEB, Justice.
This is an action in damages arising out of a motor vehicle accident which occurred on the western incline of the Mississippi River bridge at Baton Rouge during the early morning hours of January 30th 1949, when a pick-up truck, owned by Red Stick Tire & Supply Company and driven by its employee, Adam J. Tullier, ran into the rear end of a Louisiana Department of Highways' truck which was stopped on the south lane of the bridge at a point approximately two-thirds upwards of the middle. Plaintiff, a guest passenger in the pick-up truck, sustained painful and permanent injuries in the accident for which he seeks recovery of $33,100.44. The defendants in the case are Red Stick Tire & Supply Company and its liability insurance carrier, State Farm Mutual Automobile Insurance Company, Joseph Silvio, the operator of the Department of Highways' truck, and Great American Indemnity Company, the insurer of Department of Highways.
In his petition, plaintiff attributes the accident and his ensuing injuries to the combined negligence of Tullier, who he alleges failed to keep a proper lookout and negligently ran into the rear of the highway truck, and Silvio, who, it is averred, was at fault in stopping the truck on the bridge at night without visible tail lights, in failing to place proper flares to the front and rear of the truck and in parking the truck in such a position that sufficient clearance was not allowed for the safe passage of other traffic.
Red Stick Tire & Supply Company and its insurer contended in their answer that Tullier was not acting within the course and scope of his employment at the time of the accident. They also denied that he was at fault in any respect and, alternatively, pleaded the contributory negligence of plaintiff as a bar to his recovery. The other defendants, Silvio and Great American Indemnity Company, declared that the accident was caused solely through the negligence of the driver of the pick-up truck and averred that neither Silvio nor the Department of Highways was chargeable with fault in the premises. Similarly, they alternatively pleaded contributory negligence on the part of plaintiff.
Following a hearing on these issues, the trial judge concluded from the evidence that the accident was occasioned by the combined and concurring negligence of Tullier and Silvio. Accordingly, he held State Farm Mutual Automobile Insurance Company, Great American Indemnity Company and Silvio liable in solido. The amount of the judgment was $14,100.44. However, the two insurance companies were cast for not more that $10,000, which is their maximum liability under contracts with their respective insureds. The judgment was silent as to the liability of Red Stick Tire & Supply Company, which was tantamount to its dismissal from the proceeding. In truth, no serious controversy existed as to that defendant for, admittedly, Tullier was using the truck for purposes of his own at the time of the accident and therefore the doctrine of respondeat superior was clearly without application. Conversely, the liability of the insurer of Red Stick for Tullier's negligent operation of the truck is predicated upon an omnibus clause contained in the policy and, although the applicability of this policy provision was at first questioned by the insurer, it has long since been conceded by it that, inasmuch as Tullier had initial permission to use the truck, he was afforded full protection under the policy as an additional insured, Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744, and the issue has passed out of the case.
All defendants cast in the lower court prosecuted appeals to the Court of Appeal, First Circuit. There, the judgment was reversed, the Court ruling that, irrespective of the primary negligence of the operators of the trucks involved in the accident, plaintiff was not entitled to recover as he was guilty of contributory negligence having causal connection with his injuries. See 55 So.2d 75. On plaintiff's application, we granted certiorari for the purpose of examining the correctness of this holding.
*248 The salient facts of the case are not in dispute. We find them to be as follows:
On January 29th 1949, Tullier, an appliance serviceman in the employ of Red Stick Tire & Supply Company, was engaged in installing a heating unit for a customer and was using the pick-up truck (later involved in the accident) in connection with his duties. He completed his work at about 8:30 p. m. and went to his home in Baton Rouge where he bathed, changed clothes and had supper. At about 10:30 p. m. he drove the truck to the Oasis Bar, a saloon in Baton Rouge of which plaintiff is part owner, where he remained until closing time at midnight.[1] He and plaintiff decided then to visit another saloon, known as the Country Club, which is situated across the river in East Baton Rouge Parish approximately three or four miles away. The pick-up truck was used for the purpose of this trip, Tullier driving it over the bridge and to the desired destination at a speed of between 30 and 35 miles an hour.
Prior to and at the time of the accident, the weather was inclement; it was sleeting intermittently and exceptionally cold. Because of these conditions, the Department of Highways had directed Silvio to spread salt over the paved roadways of the Mississippi River bridge in order to prevent ice and sleet from accumulating thereon. When Tullier and plaintiff drove over the bridge on their journey into West Baton Rouge Parish, the north lane over which they travelled had already been salted by Silvio and his crew. During the salting operations, the Highway Department employees placed warning signs lighted by flares at each end of the bridge. There were two signs at each approach (the east and the west) stating "Men working on the BridgeDrive Slow" and "Icy Pavement." On the way over to the Country Club, Tullier observed the signs but did not encounter the highway truck as it had already completed the salting of that roadway of the bridge.
Tullier and plaintiff had been at the Country Club approximately an hour when they decided to return to East Baton Rouge. Meanwhile, sleet had been falling heavily and had covered the windshield of the pick-up truck while it was parked. Tullier and plaintiff removed the ice from the driver's side of the windshield and, with his windshield wiper operating, Tullier was able to have good vision of the road ahead. On the return trip, both he and plaintiff, while they were upon the approach of the south lane of the bridge, observed the warning signs that had been placed thereon by Silvio and his crew.[2] Tullier continued on at a speed of 30 to 35 miles an hour and, for some wholly unexplained reason,[3] failed to see the Department of Highways truck, which had stopped at a point two-thirds of the distance upward on the western incline of the bridge, until he was about ten feet from it. At that time, it was, of course, too late to avert an accident.
The Court of Appeal took the position that the alleged primary negligence of Tullier and Silvio was unimportant because, in any case, plaintiff was guilty of such imprudent conduct as to preclude his recovery. It found that plaintiff's derelictions consisted of riding in the pick-up *249 truck when his side of the windshield was so coated with sleet that he could not see sufficiently well to describe any type of object; that he permitted Tullier to drive at a speed of 30 to 35 miles per hour up the incline of the bridge without protest, in spite of the warning signs commanding slow driving because men were working on the bridge; that he did not realize, when he should have been aware, that the traffic lane of the bridge was obstructed by a truck; that he failed to see that Tullier heeded the signs to go slow and that, had he done so, the accident would not have occurred.
We think that the ruling of the Court of Appeal has the effect of burdening the guest passenger in a motor vehicle with a corollary duty of care for the safety of the operation equal to that imposed upon the driver himself.
Contributory negligence is, as the phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred.[4] Insofar as the rights of a guest in an automobile are concerned, it is settled that, in actions against third persons, the negligence of the host driver does not bar recovery because his negligence cannot be imputed to the guest. Lawrason v. Richard, 172 La. 696, 135 So. 29; Lorance v. Smith, 173 La. 883, 138 So. 871. However, a guest may be denied recovery on the ground of contributory negligence in instances where he is guilty on his own part of independent negligence of such a nature, that, but for which, his injuries would not have been sustained. Lorance v. Smith, supra; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Delaune v. Breaux, 174 La. 43, 139 So. 753; Squyres v. Baldwin, 191 La. 249, 185 So. 14. But in determining whether the asserted fault of a guest has been a contributing factor in bringing about his injuries, it is first necessary to ascertain what duties are imposed upon him as pertain to the operation of the vehicle and the safety of the journey. It is firmly established by the above cited authorities of this Court and others of the Courts of Appeal of this State, too numerous to mention, that a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469, "* * * is not required to monitor the operation or to pay attention to the road and other traffic conditions" in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.
On the other hand, the jurisprudence has imposed upon the guest an obligation to avoid an accident or injury to himself under certain conditions. That duty has been tersely said by this Court, in Delaune v. Breaux, supra, to exist in cases where the guest "* * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver * * *." 174 La. at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time *250 when the driver is able to avert it, his dereliction may be said to be a contributing cause of any injury he may sustain.
In addition to these instances of contributory negligence, recovery of a guest may be refused when he has knowingly assumed a particular risk, such as riding with an intoxicated driver or one otherwise incompetent. This doctrine of assumption of risk has sometimes been applied indiscriminately by the courts as contributory negligence. James, Assumption of Risk, 61 Yale L.J. 141 (1952). Be this as it may, discussion of the doctrine is unimportant in this case for reasons to which we shall hereinafter advert.
Applying the foregoing rule of law to the facts presented, we experience difficulty in discerning the alleged contributory negligence of plaintiff. The Court of Appeal thought that it was imprudent for plaintiff to ride in the truck under the weather conditions prevailing on the night in question, with his vision obscured by the ice upon the windshield on his side of the truck and with the windshield wiper not working. This conclusion necessarily assumes for its premise that, due to the inclement weather, plaintiff was charged with the obligation of keeping a proper lookout and inflicts on him a penalty for his reliance upon the skill of Tullier, whose vision was not appreciably obstructed in any way according to his own testimony. But, as we have shown, the law exacts no such duty of a guest, even in inclement weather. Squyres v. Baldwin, supra. Plaintiff was entitled to place reasonable reliance on the driver to discharge the obligation of being vigilant for the appearance of sudden or unexpected dangers. Delaune v. Breaux, supra.
The Court of Appeal also felt that plaintiff was derelict in not cautioning Tullier in respect of the speed of 30 to 35 miles an hour, which he maintained up the incline of the bridge, in view of the hazardous driving conditions and the warning signs relative to the icy pavement and the men working on the bridge. But, here again, the opinion overlooks the fact that Tullier was fully aware of the danger ahead. Hence, there was no reason for plaintiff to tell him about it. And, if it be conceded that the 30 to 35 mile per hour speed of the truck was excessive under the prevailing conditions, we do not consider it to be of such a reckless nature as would immediately apprise plaintiff that an accident was imminent and thus place upon him a duty to protest the operation.
Moreover, it seems clear that the speed of the pick-up truck had nothing whatever to do with the accident. The evidence shows that the truck was in good working order and there was no reason why Tullier could not have brought it to a stop short of an accident if he had observed the Highway truck directly in front of him on the bridge at the time it came within the range of vision of his headlights. Hence, the fact that he was driving at 30 to 35 miles per hour instead of 20 to 25 miles an hour was not the proximate cause; the accident was due to his failure to see the truck until he was within ten feet of its rear. Generously assuming, then, that plaintiff should have asked or demanded that Tullier retard the speed of the truck, there is nothing to show that his failure in this respect would have averted the mishap.
Respective counsel for all defendants have earnestly contended that Tullier was under the influence of liquor, although they concede that there is no proof that he was intoxicated. While we fail to perceive the difference between intoxication and being under the influence of liquor, we undertake discussion of the matter because the Court of Appeal implies in its opinion that it entertained doubt as to the veracity of the testimony of Tullier and plaintiff that each had consumed not over two bottles of beer during the entire evening. The only other evidence on this subject is that of the members of the Highway Department crew and the state policemen, who arrived at the scene of the accident shortly after its occurrence. Some of these witnesses say that Tullier had the odor of liquor on his breath, but no one was willing to avouch that he was under its influence. On the contrary, Sgt. Green of the State Police stated that, if he had thought that Tullier had been operating the truck under the influence *251 of liquor, he would have noted it in his report of the accident and would have charged him with the offense. Obviously, then, defendants' charge that plaintiff assumed the risk by entrusting his safety to a driver under the influence of alcohol is not meritorious.
Being of the opinion that defendants have not established their special plea that plaintiff was contributorily negligent, there remains only for decision the questions respecting defendants' liability, that is, whether the accident was caused solely by the negligence of Tullier, or that of Silvio, or by the concurring fault of both of them, and also the quantum of plaintiff's damages. Since the Court of Appeal has not considered those issues, which primarily fall within its appellate jurisdiction, it is proper, even though not essential, that the case be remanded to that Court for their disposition. Mataya v. Delta Life Ins. Co., 222 La. 509, 62 So.2d 817.
The judgment of the Court of Appeal is accordingly reversed and the case is remanded to that Court for further proceedings consistent with the views herein expressed. The costs of this writ of review are to be paid by the defendants; taxation of all other costs is deferred until final determination of the case by the Court of Appeal.
LE BLANC, Justice (dissenting).
I am of the opinion that the Court of Appeal correctly decided all the issues presented in this suit and more particularly do I think that that Court properly disposed of the question of negligence as it related to the guest passenger in the car, which appears to have been the most strongly controverted issue in the case.
The Court of Appeal in having denied recovery to the guest passenger relied on the holding in the case of Clifton v. Dean, First Circuit 1936, 169 So. 788, 790, in which it was stated that: "* * * a guest passenger in an automobile is not required to keep a constant lookout for the dangers of the road incident to automobile driving and that he has the right to rely to a reasonable extent on the exercise of the proper duty of care by the driver in charge of the car. This does not mean, however, that he can lightly abandon all care and throw all precaution to the wind. When unusual circumstances present themselves and the danger of driving increases, he is held to the exercise of greater prudence for his own safety and of at least protesting against any carelessness or negligence on the part of the driver. The plaintiff Clifton, having failed in the observance of this precaution, if indeed he did not acquiesce in the driver's negligence, makes him equally guilty of contributory negligence, and he is not entitled to recover."
That statement, after all, is merely an elaboration of the same principle as is laid down in the text books and other authorities on the question. For instance, in 5 Am.Jur., Automobiles, Section 476, it is stated:
"The general rule may be stated to be that ordinarily a driver is intrusted with caring for the safety of the occupants of his car, and that unless the danger is obvious or is known to the guest, the latter may rely upon the assumption that the driver will exercise proper care and caution; but that if a guest in an automobile driven by another sees, or ought by due diligence to see, a danger not obvious to the driver, or sees that the driver is incompetent, careless, or not taking proper precautions, it is the duty to give some warning of danger, and that a failure to do so constitutes contributory negligence. * * * In other words, a passenger may not rely blindly upon the skill and driving judgment of the person at the wheel."
In 61 C.J.S., Motor Vehicles, § 487, the principle is stated as follows:
"In the absence of any fact or circumstance indicating that the driver is incompetent or careless, an occupant or guest in a motor vehicle ordinarily has the right to rely on the assumption, within reasonable limits, that the driver possesses skill and judgment and, in the operation of the motor vehicle, will exercise reasonable care and vigilance to avoid danger, * * *. In *252 accordance with this rule, unless the danger is known or obvious, an occupant is not required to anticipate negligence on the part of the driver, and is not guilty of contributory negligence if, in reliance on the skill and due care of the driver, he does not take active steps to see that the vehicle is properly operated.
* * * * * *
"An occupant of a motor vehicle, however, may not abandon the exercise of his own faculties and intrust his safety absolutely to the driver, regardless of the imminence of danger, or the visible lack of ordinary care on the part of the driver to avoid harm, and if the occupant knows, or by the exercsie of reasonable care should know, that he can no longer rely on the driver to exercise reasonable care and caution he himself should take affirmative action and exercise care proportionate to the known or obvious danger. If he fails to use such care, including the exercise of his own senses of sight, hearing, and perception to protect himself under such circumstances, he is guilty of contributory negligence." (Emphasis supplied.)
It may be that the use of the term "contributory negligence" in stating the principle in all cases is subject to debate but it is to be observed that in the treatment of the subject reference is also made to "assumption of risk" or the "acquiescence" of the guest in the manner in which the driver is operating and driving the vehicle, and in this connection it is important to consider a further statement in 61 C.J.S., § 486 which is as follows:
"Although the relation of guest and driver is not contractual, it is consensual, and because of its consensual character, it is generally subject to the rules relating to assumption of risk, although there is also authority to the contrary. There are three elements of the doctrine of assumption of risk: (1) A hazard or danger inconsistent with the safety of the occupant. (2) Knowledge or appreciation of the hazard by the occupant. (3) Acquiescence or a willingness to proceed in the face of the danger.
"Under this doctrine an occupant or guest in a motor vehicle, whether invited or permissive, voluntarily assumes the risk of injuries from known or obvious dangers or hazards incident to the ordinary operation of the vehicle, and, therefore, cannot recover for injuries resulting therefrom. He assumes all the ordinary risks of injury incident to travel in a motor vehicle controlled by a reasonably prudent driver. The risk which the occupant may be held to have assumed may arise from the condition of the weather, driving on a much-traveled highway at night without lights, the icy condition of the streets or highways, the purpose and character of the trip in the motor vehicle, riding in the back seat, or the necessity of making a detour.
* * * * * *
"An occupant's assumption of risk is distinct from any question of his contributory negligence, and in determining the fact of the host's nonliability for the occupant's injuries on the theory of assumption of risk the fact that the occupant was not guilty of contributory negligence is immaterial."
This Court has evidently been aware of the distinction between a guest's contributory negligence and his assumption of risk as brought out in the foregoing discussion in connection with the doctrine of the latter doctrine which, as is shown, includes the element of "acquiescence or willingness to proceed in the face of danger," for in the case of Lorance v. Smith, 173 La. 883, 138 So. 871, 877, it is stated that "the theory underlying the rule or doctrine that an invited guest in an automobile cannot recover damages arising from injuries due to the negligence of his host, where such guest is aware of the danger and makes no protest, is that of assent to and acquiescence in such negligence."
All of these principles relating to the conduct and the duties of the guest in an automobile are not without their application *253 by this court as is fully reflected in the case of Lorance v. Smith, supra, and more particularly, in my opinion, in the case of Aaron v. Martin, 188 La. 371, 177 So. 242, 246.
In the latter case the guest was denied recovery for injuries sustained in an accident when the car in which he was riding ran into a railroad box car which was blocking all or nearly all of a crossing on the highway. It was shown that he knew that the switch track was there and that the spur track used in connection with the switching of cars had not been abandoned but was being used, and he was held as stated, to the duty, "as a matter of self-protection to be observant, and if the driver apparently was not aware of the presence of the track and the probability that it might be in use at the time, it was plaintiff's duty to warn him. Plaintiff could not shift the entire responsibility upon the driver. He knew that the driver should at least slow down at the crossing. Knowing the surroundings and circumstances as he did, it was not only his duty to look ahead, but to warn the driver to be cautious. He did nothing of the kind, but sat idly by and said nothing." Quoting from the case of Delaune v. Breaux, 174 La. 43, 139 So. 753, the Court added: "He did not `exercise reasonable care and diligence to protect himself by making it possible for the driver to avoid an accident.'"
I can hardly think of any case in which there appeared to the driver of the car in this case and to the guest, more obvious signs of danger than are disclosed by the facts found in the record and which are recited in both the opinion of the Court of Appeal and the majority opinion of this Court. Significantly enough, I find them to have been some of the very risks that are given as illustrative in the section which I have quoted from, 61 C.J.S., namely, the condition of the weather and the icy condition of the highway. And this, without taking into account the further fact that the part of the highway the car was traveling on was a bridge across the Mississippi River, with a steep incline and on which it was found necessary for the State Highway Department to have a crew working that night, scattering salt to melt the ice on the surface of the highway. As a warning to the public, proper signs, illuminated by flares, were placed at the foot on each end of the bridge. These conditions were all very obvious to the guest in the car and he voluntarily assumed the risks and the hazards involved in them.
I might add my own observation which I think is supported by general, public knowledge, that the weather conditions that night were unusual and abnormal in the area where this accident occurred because it is seldom indeed, in my opinion, that it becomes necessary for people driving and riding in automobiles there, to have to scrape the ice which forms on the windshields of their cars in order to afford proper driving vision. It is noted that the ice was scraped from the windshield on the driver's side and apparently it is surmised from that that was sufficient since it cleared the driver's vision. I, however, cannot agree that that satisfied the requirements of precaution on this point for had the parties scraped the ice on the guest's side of windshield as well, he also would have seen ahead and thereby could have been able to make use "of his own senses of sight * * * and perception to protect himself" under the circumstances then existing. Having failed to do this and in fact to do any thing to guard against the hazards and dangers that were obvious to him, and having permitted the driver to operate the car at thirty-five miles an hour which, under the circumstances was negligence in itself, he should be held to have "assented to and acquiesced in such negligence" and should not be permitted to recover.
For these reasons I respectfully dissent.
NOTES
[1] Tullier says he drank only one bottle of beer at Oasis Bar and not more than two bottles during the entire evening. He swore that he drinks nothing stronger than beer and that, due to the freezing weather on the night of the accident, he did not desire to drink many cold beverages.
[2] However, plaintiff's vision was much obscured by the accumulation of ice on his side of the windshield which had not been entirely removed because the mechanical wiper on that side of the windshield was out of order.
[3] We say this because the evidence shows that, save for the defective windshield wiper on plaintiff's side, the truck was in mechanical good order and its headlights were illuminating properly. In addition, the roadways of the bridge were lighted and a member of Silvio's crew was stationed fifty feet in the rear of the Highway truck, flagging traffic to the left with a flashlight and handkerchief. Hence, but for the falling sleet, there was nothing to interfere with the driver's vision and he says in his testimony "Under those general conditions it was as good as it was on a sunny day".
[4] Blashfield, in his Cyclopedia of Automobile Law and Practice, Perm. Ed. Vol. 4, Ch. 71, Section 2553, declares: "* * * contributory negligence is a part of the doctrine of proximate cause, that is, to bar a recovery for an injury it must be the proximate cause thereof, and, before an illegal act or omission can be held to be contributory negligence, it must appear that there was a causal connection between such act or omission and the injury complained of. The mere collateral wrongdoing of the injured person cannot of itself defeat a right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence ddi not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar a recovery."