569 F.2d 320
 Lionel BURDIS, Plaintiff-Appellant,
v.
The TEXAS & PACIFIC RAILWAY COMPANY, Defendant-Appellee,
Commercial Union Insurance Company, Intervenor.
 No. 75-4357.
 United States Court of Appeals,
Fifth Circuit.
 March 13, 1978.
 
 Ralph D. Hillman, Thibodaux, La., for plaintiff-appellant.
 J. Barnwell Phelps, Esmond Phelps, II, New Orleans, La., for defendant-appellee.
 Charles J. LeBlanc, Thibodaux, La., for other interested parties.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before GOLDBERG, AINSWORTH and FAY, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 Plaintiff Lionel Burdis, a Louisiana resident, brought this diversity action, see 28 U.S.C. § 1332, against defendant Texas & Pacific Railway Company (hereinafter "Texas & Pacific"), a Texas corporation, for personal injuries allegedly arising out of an accident which occurred on October 24, 1974, at approximately 9 a. m., when a railroad locomotive owned by Texas & Pacific collided with an automobile in which Burdis was a passenger.[1] Burdis was seriously injured. The accident occurred at the intersection of railroad tracks and a road located on the property of the Bessie K Plantation in St. James Parish, Louisiana. A jury heard the case on October 16 and 17, 1975 and found for the railroad. Burdis appeals from the adverse judgment.
 
 
 2
 Burdis contends first that "(i)t was prejudicial error for the trial court to submit the issue of whether the road (at which the accident happened) was 'public' or 'private' to the jury, when all of the evidence indicated it was a 'public' road, no evidence indicated it was a 'private' road, and the entire question of negligence turned on the status ('public' or 'private') of the road." (emphasis in original) In his assignment of error plaintiff Burdis refers to the fact that the trial court submitted to the jury the issue of whether the road which Burdis was traveling at the time of the accident was "public" or "private." The jury, in addition to its general verdict for defendant, also found through a special interrogatory that the road was private. The question is of considerable importance to the instant litigation because in Louisiana a railroad owes a higher standard of care to the public at an intersection between its tracks and a public road than it does at an intersection between its tracks and a private road.
 
 
 3
 Louisiana law provides that a public road is any road "open to public use," regardless of whether the road is publicly or privately owned. Galloway v. Wyatt Metal & Boiler Works, 189 La. 838, 847, 181 So. 187, 190 (1938). At an intersection between railroad tracks and a public road, a locomotive must sound "a bell and a whistle or horn" at a specified distance from the crossing as it approaches. The railroad which controls the tracks must also erect and maintain a "Railroad Cross Buck" sign at such a public crossing. These safety features are not applicable to the intersection of railroad tracks and a private road, although even there a railroad is, of course, responsible for its otherwise negligent acts. La.Rev.Stat.Ann. §§ 45:561, 45:562.[2] See Texas & Pacific Railway Co. v. Laborde, 5 Cir., 1958, 257 F.2d 587, 592, cert. denied, 358 U.S. 928, 79 S.Ct. 314, 3 L.Ed.2d 302 (1959); Guidry v. Texas & N. O. R. Co., 56 So.2d 611, 614 (La.App.1952); Lockhart v. Missouri Pac. R. Co., 153 So. 577, 580 (La.App.1934); La.Rev.Stat.Ann. §§ 32:1(17), (54).
 
 
 4
 It is undisputed in this case that the crossing at which the accident occurred was unmarked by any sign, railroad or highway. Whether the locomotive sounded warning signals is less certain; Texas & Pacific presented credible evidence that it did and Burdis also introduced credible evidence that it did not. The question of whether the road was public or private, and therefore whether the railroad owed a higher standard of care, was thus of critical importance to the outcome of the case. Predictably, it was vigorously disputed. Burdis, as well as the driver of the car involved in the accident, the additional passenger, and the driver of a car closely following Burdis' car at the time of the accident, all testified that the road in question was open to the public. Texas & Pacific, on the other hand, offered the testimony of a local resident, who stated that the road was not used by the public. Another Texas & Pacific witness, the officer who investigated the accident, also testified that the road was private. Moreover, Burdis himself on cross-examination admitted that he had seen a sign on the road indicating its private nature and that travelers were to proceed on it at their "own peril." In light of such conflicting evidence, the district court properly submitted the "public v. private" question to the jury, for it is hornbook law that such questions of fact are peculiarly within the jury's province. See Lavender v. Kurn, 327 U.S. 645, 652-53, 66 S.Ct. 740, 743-44, 90 L.Ed. 916 (1946). See also Fed.R.Civ.P. 49(b). Burdis' contention that the district court erred is therefore without merit.
 
 
 5
 Plaintiff Burdis next asserts that the district court committed reversible error in two of its evidentiary rulings. First, plaintiff argues that the trial court erred by excluding seven photographs allegedly showing certain physical characteristics of the road in question and purportedly offered to show the public nature of the road. The district court sustained Texas & Pacific's objection to the introduction of these photographs on the morning of trial because they were not listed on the pretrial order. We find no error in this ruling. The Pretrial Notice to counsel in this case states that "(e) xcept for good cause shown, the Court will not permit the introduction of any exhibits, including exhibits to be used solely for the purpose of impeachment, unless they have been listed in the Pre-Trial Order, or unless the necessity for the use of any particular exhibit reasonably could not have been foreseen." Fed.R.Civ.P. 16, which pertains to pretrial procedure, provides further that the pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Additionally, the rule in this Circuit is that decisions concerning variance from the pretrial order are "within the sound discretion of the trial judge as interpreter of the pretrial order." Bornmann v. Great Southwest General Hospital, Inc., 5 Cir., 1971, 453 F.2d 616, 625. There was no abuse of that discretion here. See Laird v. Hudson Engineering Corp., 5 Cir., 1971, 449 F.2d 216, cert. denied, 405 U.S. 955, 92 S.Ct. 1177, 31 L.Ed.2d 232 (1972).
 
 
 6
 Second, plaintiff Burdis submits that the district court erred by admitting into evidence a state court petition filed prior to the instant action in which Burdis sought recovery of damages from the insurer of the driver of the car. Burdis contends that the sole purpose and effect of introducing this petition was to mislead the jury into believing that the driver of the automobile in which Burdis was riding, rather than the railroad, caused the accident. Texas & Pacific avers that the petition was properly admitted because it was relevant to possible contributory negligence by Burdis, which, as defendant's answer to plaintiff's complaint indicates, was an issue at trial. We agree with Texas & Pacific. In pertinent part the state court petition states:
 
 
 7
 Plaintiff's injuries were caused by the negligence of defendant's insured, James Frank, in that he was driving at an excessive rate of speed, failed to exercise caution in approaching a railroad crossing, failed to hear what he should have heard or see what he should have seen.
 
 
 8
 If the driver of the car was behaving negligently and Burdis was aware of it, the issue of contributory negligence by Burdis could be raised. See Aaron v. Martin, 188 La. 371, 382-83, 177 So. 242, 246 (1937); Lorance v. Smith, 173 La. 883, 899-902, 138 So. 871, 876-77 (1932); Ferguson v. Highway Insurance Underwriters, 109 So.2d 289, 296 (La.App.1959). But cf. White v. State Farm Mut. Auto. Ins. Co., 222 La. 994, 1007, 1011-1018, 64 So.2d 245, 250, 251-53 (1953). This is so because Louisiana law imposes an independent duty on a passenger in a vehicle about to traverse a railroad crossing to use ordinary and reasonable care for his own safety. Aaron v. Martin, supra, 188 La. at 383, 177 So. at 246; Alanza v. Texas & Pacific Railway Co., 32 So.2d 341, 344-45 (La.App.1947). The petition, then, was properly admitted as speaking to the issue of Burdis' contributory negligence.[3]
 
 
 9
 Burdis disagrees finally with portions of the district court's jury instructions. He did not object at trial, however, to two of these instructions of which he now complains the instruction pertaining generally to the safety responsibilities of a railroad at railroad crossings[4] and the instruction pertaining to a driver's duty to stop at railroad crossings.[5] His objections were therefore waived. Fed.R.Civ.P. 51.[6]
 
 
 10
 Burdis also now complains, as he did at trial, to the instruction explaining the requirement of a locomotive to sound its approach to public crossings[7] and to the instruction explaining a railroad's statutory duties at private crossings[8] on the ground that La.Rev.Stat.Ann. § 45:561, see note 2 supra, applies to all roads. Under his interpretation, Louisiana law requires locomotives to sound warning signals at intersections with both public and private roads. As we stated previously, see footnote 2 supra and accompanying text, this is not the law in Louisiana. The statute refers only to public roads. Finally, Burdis contends, as he did at trial, that the instruction pertaining to a railroad's duties at open country crossings[9] is erroneous and contradicts the instructions set forth in footnotes 4, 7, and 8. His contentions are without merit. See Texas & Pacific Railway Co. v. Laborde, supra, 257 F.2d at 592; Lockhart v. Missouri Pac. R. Co., supra, 153 So. at 580.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Commercial Union Insurance Company intervened in the proceeding to recover out of any judgment for Burdis the amounts allegedly paid to him in workmen's compensation benefits
 
 
 [2]
 La.Rev.Stat.Ann. § 45:561 provides:
 Every railroad company or person owning and operating a railroad in this state shall equip each locomotive engine with a bell and a whistle or horn which, under normal conditions, can be heard at a distance of three hundred yards and, upon engines approaching at grade any street or highway crossing, whether or not said crossing shall be otherwise protected, shall, for a distance of not less than three hundred yards and until crossing is reached, cause either the bell to be sounded continuously or blasts of the whistle or horn to be sounded in the manner, provided by the Uniform Code of Railroad Operating Rules, unless the distance from that crossing and the start of that movement or the distance between crossings be less, in which event such warning signals shall be so sounded for that lesser distance; provided, however, that in cases of emergency said whistles or horn may be sounded in repeated short blasts.
 La.Rev.Stat.Ann. § 45:562 provides in pertinent part:
 . . . Any person, firm or corporation controlling any railroad track which intersects a public road or street except those contained in the maintenance system of the State Highway Department, at grade crossings shall erect and maintain a "Railroad Cross Buck" sign at the crossings above referred to which shall be white with the "Railroad Crossing" in black letters. The sign shall be reflectorized. If there are two or more tracks, same shall be indicated on an auxiliary sign of inverted "T" shape mounted below the cross buck. This sign shall be erected on the right hand side of the roadway of such approach to the crossing not more than 50 feet nor less than 15 feet from the nearest rail and not less than 6 feet or more than 12 feet from the edge of the roadway. The sign shall be 10 feet above the level of the highway and said sign shall be constructed in accordance with the standards of the State Highway Department.
 
 
 [3]
 Counsel for Burdis asserts that the allegations made in the state court petition were his; his client, he says, neither signed the petition nor was aware of the allegations therein. Whether Burdis was aware of the allegations or whether he signed the petition is irrelevant. Such a pleading, prepared by an attorney, is admissible and binding upon the pleading party. Great American Indemnity Co. v. Rose, 5 Cir., 1957, 242 F.2d 269, 271-72. See Glaesman v. Shop-Rite Foods, Inc., 10 Cir., 1971, 438 F.2d 341, 342. McCormick On Evidence § 265 at 636 (E. Cleary ed., 2d ed. 1972) states the rule this way:
 How far is it necessary to connect the pleading with the party against whom it is sought to be used in evidence as an admission? Certainly if it be shown to have been sworn to, or signed by the party himself that would be sufficient. More often, however, the pleading is prepared and signed by counsel, and the older view holds that it is not sufficient to show that the pleading was filed or signed by the party's attorney of record, and that the statements therein will be presumed to be merely "suggestions of counsel" unless other evidence is produced that they were actually sanctioned by the client. The trend today, however, is to the sensible view that pleadings shown to have been prepared or filed by counsel employed by the party, are prima facie regarded as authorized by him and are entitled to be received as his admissions. It is open to the party to give evidence that the pleading was filed upon incorrect information and without his actual knowledge but such a showing goes only to the weight, not the admissibility of the pleading. (footnotes omitted)
 Subsequent to oral argument in this case, the district court held a hearing to supplement the record because of a hiatus in the transcript judged to be approximately ten minutes of testimony. The transcript of the hearing indicates the district court entertains some doubt that Burdis' counsel objected to the admission of the state court petition. Failure to object would, of course, preclude Burdis from complaining on appeal. Fed.R.Evid. 103(a)(1). It is unnecessary to decide this issue because, as we have noted, the state court petition was properly admitted.
 
 
 [4]
 The district court stated:
 A railroad has certain duties with respect to safety at railroad crossings. These duties vary according to the legal status of the road that crosses the railroad tracks. The road may be either "public" or "private". You must decide whether the road involved in this case is public or private.
 
 
 [5]
 The district court stated:
 The operators of a train have a right to assume, unless they have evidence to the contrary, that persons approaching a track, before attempting to cross it, will, as it is their duty to do, stop and make sure that it is safe to do so.
 
 
 [6]
 Fed.R.Civ.P. 51 provides that "(n)o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection." Rule 51 thus controls here, unless we find plain error, see, e. g., Clinton v. Ingram Corp., 5 Cir., 455 F.2d 741, 744-45, cert. denied, 409 U.S. 990, 93 S.Ct. 333, 34 L.Ed.2d 257 (1972), which we do not
 
 
 [7]
 The district court stated:
 If the road was public, the railroad had a duty to comply with the Louisiana law regarding public roads. That law requires every railroad to equip each locomotive engine with a bell and a whistle or horn which, under normal conditions, can be heard at a distance of three hundred yards. When the engine approaches the crossing of a public road, the operator of the train must cause the bell to be sounded continuously or the whistle to be blasted in the manner provided by the Uniform Code of Railroad Operating Rules for a distance of not less than three hundred yards and until the crossing is reached. In cases of emergency the whistles or horn may be sounded in repeated short blasts.
 
 
 [8]
 The district court stated:
 If the road was private, the railroad had no statutory duties with respect to safety at the crossing. The railroad and its personnel, however, still had a duty to act in a manner that was reasonably prudent under the circumstances.
 
 
 [9]
 The district court stated:
 Railroads are not required to maintain flagmen or mechanical warning devices at open country crossings in sparsely settled rural areas, nor are they required to install gates, signs or other markings at such country crossings.
 Neither is a railroad required to blow whistles or horns or ring bells or to slow down at such crossings unless there are some unusual conditions or circumstances that makes such action proper.